**ACADEMY CORP., Appellant,**

v.

**INTERIOR BUILDOUT & TURNKEY CONSTRUCTION, INC. and Thomas Stuckey, Appellees.**

**No. 14–98–00885–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 15, 2000.

Rehearing Overruled July 13, 2000.

Charles Herring, Jr., Tim N. Sims, Austin, for appellants.

Brian D. Womac, Richard N. Countiss, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## OPINION

MAURICE E. AMIDEI, Justice.

Academy Corp. ("Academy"), appeals the judgment entered in favor of Interior Buildout and Turnkey Construction, Inc. ("Turnkey") on its claim for breach of contract. Academy also appeals the trial court's judgment that it take nothing on its claims against Turnkey and Thomas Stuckey ("Stuckey"). We affirm, in part, and reverse and remand, in part.

## I. Background

Academy owns a chain of retail sporting goods stores. Turnkey is a construction company, which remodels interiors. Academy and Turnkey entered into two contracts for the remodeling of two of Academy's stores located in San Antonio and League City (the "San Antonio and League City contracts"). Asserting claims for breach of contract, quantum meruit, and verified account, Turnkey sued Academy for withholding payments totaling $235,811.11 under the San Antonio and League City contracts. In response, Academy brought counterclaims against Turnkey, and joined Stuckey, the owner of Turnkey, as a third-party defendant, for breach of contract, fraud, conspiracy to commit fraud, and unjust enrichment.

The case was tried to a jury, which found against Academy on: (1) its breach of contract, fraud, and conspiracy claims, and (2) its defense that its withholding of the $235,811.11 was excused. The jury further awarded Turnkey $150,000 in attorney's fees for services rendered for trial; $20,000 in the event of appeal to the court of appeals; $5,000 if review is sought in the Texas Supreme Court; and $5,000 if review is granted. Based on the jury's verdict, the trial court entered judgment awarding Turnkey $235,811.11 on its breach of contract claim and attorney's fees in accordance with the amount awarded by the jury. The trial court further ordered that Academy take nothing on its counterclaims against Turnkey and its third-party action against Stuckey.

## II. Subject Matter Jurisdiction

In its first issue, Academy asserts that the trial court lacked subject matter jurisdiction over this case at the time of trial. Academy joined Ronnie Bartee, a former Academy employee, as a third-party defendant. Bartee, however, filed for bankrupt-

cy and Academy removed the case to the United States Bankruptcy Court, Southern District of Texas. On May 1, 1998, the bankruptcy court ordered Academy's claims against Bartee severed, and remanded the remaining claims to state court. On May 4, 1998, the trial court called the case to trial.

The Federal Rules of Bankruptcy Procedure provide a ten-day period after the entry of a judgment or order in which to file a notice of appeal. *See* FED. R. BANKR. P. 8002(a). Academy claims the trial court lacked subject matter jurisdiction to try the case on May 4, because that was still within the ten-day period in which to appeal the bankruptcy court's remand order; therefore, the bankruptcy court retained exclusive jurisdiction. We note that in its brief to this court, Academy states that it "chose not to appeal" the bankruptcy court's remand order.

■ The bankruptcy court acquired jurisdiction over this case upon removal to that court. *See Stewart Title Co. v. Street*, 731 S.W.2d 737, 739 (Tex.App.-Fort Worth 1987, no writ); *Henke Grain Co. v. Keenan*, 658 S.W.2d 343, 346 (Tex.App.-Corpus Christi 1983, no writ). However, once the bankruptcy court ordered the case remanded and mailed a certified copy of the remand order to the state district court, that court was revested with jurisdiction over this case. *See Dallas Bank & Trust Co. v. Frigiking, Inc.*, 692 S.W.2d 163, 165 (Tex.App.-Dallas 1985, writ ref'd n.r.e.) (finding the termination of the bankruptcy court's jurisdiction was complete when it mailed a certified copy of the remand order to the district clerk of Dallas County); *see also Quaestor Inv., Inc. v. State of Chiapas*, 997 S.W.2d 226, 227 (Tex.1999) (per curiam) (holding that the state court is revested with jurisdiction when a federal district court executes the remand order and mails a certified copy of the order to the state court).

■ Academy alternatively contends that this case was stayed under an automatic stay provision set forth in the Rules of Bankruptcy Procecure. *See* FED. R. BANKR. P. 7062. Rule 7062 states that the ten-day stay of the enforcement of judgments provided by Federal Rule of Civil Procedure 62 applies in adversary proceedings. *See id.* Rule 7062, however, further provides that when relief is granted from 11 U.SC. § 362, which is the relief that was granted in the bankruptcy court's order in this case, there is no automatic stay provided by Rule 62. *See id.* Therefore, Academy may not rely on Rule 7062.

■ Moreover, even if Academy had appealed the remand order, it would have had to obtain a stay of the state court proceedings from the federal district court or the federal court of appeals. Without a stay, the state court is free to proceed. *See Fosdick v. Dunwoody*, 420 F.2d 1140, 1141 (1 st Cir.1970) (observing that "absent a supersedeas, an appeal does not vacate orders of the district court, further state proceedings are not avoidable"); *Citizens Bank & Trust Co. v. Carr*, 583 So.2d 864, 866 n. 2 (La.App. 1 st Cir.), *writ denied*, 588 So.2d 109 (La.1991) (determining that the state court has jurisdiction while an appeal of a remand order is pending and further state court proceedings are appropriate unless a stay of the state court proceedings has been obtained); *Drew v. Unauthorized Practice of Law Comm.*, 970 S.W.2d 152, 156 (Tex.App.-Austin 1998, pet. denied) (finding that state trial court did not err in continuing its proceedings after remand from federal district court while appeal of remand order was pending, in light of the appellant's failure to obtain stay of the state court proceedings from either the federal district court or court of appeals). In any event, Academy did not seek or obtain a stay of the state trial court proceedings. We find that the trial court had subject matter jurisdiction over this case and, accordingly, overrule Academy's first issue.

### III. Sales and Employment Taxes

#### A. Exclusion of Evidence

■ In its second issue, Academy claims that the trial court erred in exclud-

ing evidence from the jury concerning Turnkey's failure to withhold and pay sales and employment taxes, which formed one basis for Academy's breach of contract claim. The admission or exclusion of evidence rests within the sound discretion of the trial court. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). To obtain reversal of a judgment based upon error in the admission or exclusion of evidence, the appellant must show: (1) that the trial court did in fact commit error, and (2) that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). Therefore, the appellant must show the judgment turns on the particular excluded or admitted evidence. *See Alvarado,* 897 S.W.2d at 753–54.

Academy offered the testimony of Gary Winkler, Academy's comptroller, to show that from 1991 to 1996, Turnkey failed to pay sales taxes to the State in connection with goods and services Turnkey provided to Academy, and employment taxes on its employees. According to Academy, such evidence established: (1) Turnkey's breach of the San Antonio and League City contracts, (2) Academy's defense to Turnkey's breach of contract claim, and (3) Academy's claims against Turnkey. The trial court "admit[ed] all of the testimony regarding the sales tax audits before the Court to determine whether or not there are any fact issues to go to the jury on this issue or whether it's a matter of law." After hearing the testimony, the trial court determined there were no fact issues concerning the tax matters, but instead, such matters were questions of law for the court.

Academy claims that under the San Antonio and League City contracts, it was entitled to withhold all sums due on those contracts until Turnkey had paid all taxes related to the work it performed under the contracts:

10. Taxes. The Contract Amount includes all federal, state and local taxes and duties. All taxes levied or assessed against Owner or Contractor arising out of the furnishing or installation by Contractor or materials, equipment or any other kind of personal property in the improvement of the Property shall be paid by Contractor, and all such taxes are included in the Contract Amount. If the applicable taxing authority does not require Contractor to pay all or part [of] such taxes, or Contractor obtains a refund in whole or in part of any such tax which was included in the Contract Amount, then in either even the Contract Amount shall be correspondingly decreased. *Contractor's failure to pay any federal, state or local taxes or duties shall entitle Owner to withhold any sum due to Contractor under this Contract, and if such taxes are not paid within forty-eight (48) hours after notice from Owner to Contractor of such unpaid taxes, Owner may forthwith terminate this Contract without further liability to Contractor and/or pay such taxes directly and deduct the amount thereof from the Contract Amount.*

(Emphasis added).

Pursuant to Paragraph 10, if Turnkey failed to pay taxes that had been levied or assessed under the contract, Academy could temporarily withhold any sums due to Turnkey under the contract. Academy was then required to give notice to Turnkey of the amount of unpaid taxes due, and if Turnkey did not pay the taxes "within forty-eight (48) hours after notice," Academy could pay the taxes owed, deduct the payment from the amount owed under the contract, and terminate the contract. Academy did not pursue any of the contractual remedies available to it. At trial, Academy did not want to have a judgment entered in its favor for the unpaid taxes. Instead, Academy wanted to retain in its bank account the $235,811.11 it withheld from Turnkey until Turnkey had paid those taxes. In view of Academy's posi-

tion at trial, it was not an abuse of discretion for the trial court to exclude from the jury testimony regarding unpaid taxes. Academy's second issue is overruled.

## B. Findings of Fact and Conclusions of Law

■ In its third issue, Academy asserts that the trial court erred in refusing to make findings of fact and conclusions of law on its claims and defenses arising from Turnkey's failure to pay sales and employment taxes pursuant to the Academy contracts. As previously observed, rather than submit the tax issues to the jury, the trial court decided that those issues were to be tried to the court.

■ If findings of fact and conclusions of law are properly requested, the trial court has a mandatory duty to file findings and conclusions. *See Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989). Such failure is presumed harmful, unless the record affirmatively shows that the complaining party suffered no injury. *See id.* An appellant is harmed if there are two or more possible grounds on which the trial court could have ruled, and the appellant is left to guess the basis for the trial court's ruling. *See Zieba v. Martin,* 928 S.W.2d 782, 786 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Goggins v. Leo,* 849 S.W.2d 373, 379 (Tex.App.-Houston [14th Dist.] 1993, no writ).

■ The trial court informed Academy that there were no disputed facts regarding the tax issues and further informed

Academy that Academy's position in not wanting a judgment on the unpaid taxes, but instead, wanting to withhold the unpaid amounts due to Turnkey until the taxes were paid was untenable. Therefore, there was not more than one basis on which the trial court could have ruled and Academy was not left to "guess" the basis for the trial court's ruling.[1] Academy's third issue is overruled.

## IV. Exclusion of Evidence Concerning the "Kickback" Scheme

In its fourth issue, Academy asserts that the trial court erred in excluding evidence establishing its claim that Bartee and Turnkey were involved in a kickback scheme in which Turnkey paid Bartee in exchange for Turnkey being awarded the San Antonio and League City contracts. Academy contends that the alleged kickback scheme breached the provision in the contracts, which prohibited Academy and Turnkey from entering into any other agreements with third parties concerning the remodeling of the San Antonio and League City stores.

Most of the excluded evidence consists of the testimony of Tim Baker ("Baker"), the owner of Baker Lighting & Signs Maintenance, regarding money he paid to Bartee in return for obtaining contracts with Academy. Although Academy lists many incidents which occurred allegedly in furtherance of the kickback scheme, most of those incidents concern Baker's involvement with Bartee, and do not concern Turnkey or Stuckey.[2]

---

1. Academy argues the proper remedy for the trial court's failure to make findings of fact and conclusions of law is reversal and remand for a new trial. Contrary to Academy's contention, if harm is shown by the court's failure to issue findings of fact and conclusions of law, the appropriate remedy is to abate the appeal and direct the trial court to correct its error pursuant to TEX. R. APP. P. 44.4. *See Cherne Indus., Inc.,* 763 S.W.2d at 773; *Zieba,* 928 S.W.2d at 786.

2. One of the listed incidents includes Red Stuckey, the brother of Stuckey and a Tur-

neky employee. Baker testified that Bartee asked Baker to pay for eyeglasses, which Red Stuckey broke when he got into a fight with an employee of Four Star Air Conditioning at Academy's store in Humble. The Four Star employee picked up a piece of extra electrical equipment that Baker had saved aside and was going to sell, splitting the proceeds of the sale with Bartee. Red Stuckey hit the Four Star employee. Baker testified that he paid for the glasses in an effort to cover up the theft scheme. Bartee warned Baker that if Mr. Gochman, the president of Academy,

## A. Rule of Evidence 404(b)

■ Academy claims that Baker's testimony showed Bartee's intent, preparation, and plan to engaged in a concerted scheme to collect kickbacks from Academy's contractors, including Turnkey. Academy argues such evidence is admissible under Texas Rule of Evidence 404(b), which provides that while evidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith, it may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* TEX. R. EVID. 404(b).

Any evidence that Baker and Bartee intended to, and prepared to, engage in a kickback scheme with other contractors or on projects other than the San Antonio and League City projects is not evidence as to Turnkey's alleged involvement. The evidence does not detail or explain Turnkey's or Stuckey's involvement in the Bartee/Baker scheme. Nor does this evidence conclusively establish any wrongdoing on the part of Turnkey or Stuckey regarding the Academy projects. *See First S.W. Lloyds Ins. Co. v. MacDowell*, 769 S.W.2d 954, 957 (Tex.App.-Texarkana 1989, writ denied). Baker's testimony was not admissible under Rule 404(b).

## B. Rule of Evidence 801(e)(2)(E)

■ Academy also asserts its excluded evidence was admissible as an exception to the hearsay rule under Rule 801(e)(2)(E). A statement is not hearsay if it is offered against a party and is by a co-conspirator of a party made during the course, and in furtherance, of the conspiracy. *See* TEX. R. EVID. 801(e)(2)(E). Academy argues that even if Stuckey and Turnkey were not aware of all the details of the conspiracy's activities, the excluded evidence regarding Bartee's involvement with other contractors was admissible. Evidence is relevant if it has a tendency to make the existence of a fact more or less probable than it

found out about the incident, then their

would be without the evidence. *See* TEX. R. EVID. 401. Evidence which is not relevant is not admissible. *See* TEX. R. EVID. 402. Baker's testimony regarding his own payments to Bartee is not relevant to show that Turnkey and Stuckey were involved with Bartee in a kickback scheme. Therefore, Baker's testimony was not admissible under Rule 801(e)(2)(E).

## C. Rule of Evidence 803(24)

■ Academy further claims that Bartee's statements to Baker regarding another contractor's initial refusal and subsequent agreement to pay kickbacks, how bids were to be rigged, and Bartee's receipt of $3,000 at Baker's birthday party attended by many of Academy's contractors, were admissible as statements against Bartee's interest because such statements subjected Bartee to potential criminal and civil liability. *See* TEX. R. EVID. 803(24). None of these statements establish any involvement by Turnkey or Stuckey, only Bartee's involvement with Baker and possibly other undisclosed contractors. Such evidence is not relevant and, therefore, was not admissible under Rule 803(24). *See* Tex.R. Evid. 401, 402.

## D. Rule of Evidence 613

■ Academy claims the trial court erred in excluding testimony by Baker of kickbacks he paid to Bartee and Bartee's demands for kickbacks because such evidence was relevant to impeach Bartee's denial that he was involved in any kickback conspiracy to defraud Academy. *See* TEX. R. EVID. 613. Again, this evidence does not connect Turnkey or Stuckey to Bartee's kickback scheme. Because it is not relevant, it was not admissible under Rule 613. *See* TEX. R. EVID. 401, 402. In sum, we find that the trial court did not abuse its discretion in excluding Baker's testimony regarding his own involvement with Bartee. Academy's fourth issue is overruled.

scheme would be in jeopardy.

## V. Exclusion of Evidence Concerning Academy's Damages

 In its fifth issue, Academy contends that the trial court's exclusion of Baker's testimony prejudiced its affirmative claim for damages because that testimony would have shown Academy's damages of at least $500,000 arising from the kickback scheme. Baker would have testified that he paid between 10% and 15% of his revenues from Academy as kickbacks to Bartee. Turnkey received more than $3,500,000 in revenues from Academy. Therefore, applying the "kickback formula," Academy's damages from Turnkey's and Stuckey's alleged kickback payments to Bartee were at least $350,000. Furthermore, as alleged co-conspirators, Academy claims that Turnkey and Stuckey are each liable for any wrongful actions committed by the other co-conspirators and, therefore, Stuckey and Turnkey are liable for the $150,000 in kickbacks that Baker admitted paying to Bartee. Without any evidence that Turnkey and Stuckey were part of a conspiracy with Bartee and Baker, the trial court did not abuse its discretion in excluding this testimony, and Academy's fifth issue is overruled.

## VI. Exclusion of Evidence of Unjust Enrichment

 In its sixth issue, Academy claims that the trial court erred in excluding evidence on its claim for unjust enrichment for Turnkey's failure to pay federal and state taxes related to work Turnkey performed for Academy, as required in the contracts. A party may recover under the theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *See Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41

(Tex.1992). Unjust enrichment, however, is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall. *See id.* at 42. Moreover, a plaintiff cannot recover under unjust enrichment " 'if the same subject is covered by an express contract.' " *TransAmerican Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex.App.-San Antonio 1996, writ denied) (quoting *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex.App.-Texarkana 1988, writ denied)); *see also Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 788 (Tex.App.-Houston [1 st Dist.] 1999, no pet.); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.App.-El Paso 1997, no writ).

Because the San Antonio and League City contracts expressly provide for the payment of taxes, Academy cannot recover for unjust enrichment. Therefore, it was not an abuse of discretion for the trial court to exclude Academy's evidence purportedly establishing its entitlement to recover for unjust enrichment. Academy's sixth issue is overruled.

## VII. Turnkey's Attorney's Fees

 In its seventh issue, challenging the legal sufficiency of the evidence supporting Turnkey's award of attorneys fees, Academy claims the trial court erred in not granting its motion for instructed verdict, motion for judgment n.o.v., and motion for new trial on Turnkey's award for attorney's fees because Turnkey failed to present evidence on three of the eight factors set forth by the Texas Supreme Court for determining the reasonableness and necessity of attorney's fees.[3] Those

---

3. When reviewing a challenge to the legal sufficiency of the evidence, i.e., a "no evidence" issue, the reviewing court may consider only the evidence and inferences that support the challenged finding and should disregard all evidence and inferences to the contrary. *See Southwestern Bell Mobile Sys.*

*v. Franco*, 971 S.W.2d 52, 54 (Tex.1998) (per curiam). A no evidence point will be sustained if there is no more than a scintilla of evidence to support the finding. *See General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex.1999).

eight factors are: (1) the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997).

Academy claims Turnkey did not present evidence of the second, fifth, and sixth factors; therefore, the evidence is legally insufficient to support an award of attorney's fees. There is nothing in *Perry Equip. Corp.* to suggest that the eight factors are elements of proof, rather than guidelines which the factfinder "should consider when determining the reasonableness of a fee." *See id.; see also* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9) (listing "factors that may be considered in determining the reasonableness of a fee include, but not to the exclusion of other relevant factors").

■■■■ Turnkey's counsel, Brian Womac ("Womac"), testified as to attorney's fees. Womac, who is board certified in commercial real estate law, stated that he had been practicing law for thirteen years, had experience with commercial contracts, and had represented property owners in retail establishments and contractors. Womac's firm had expended 1200 hours of attorney's time on this case. Womac believed that all the services his firm had rendered were reasonable and necessary to prosecute Turnkey's claims. He testified that it was necessary to prepare demand letters, propound written discovery, respond to Academy's discovery, and take depositions. Womac also stated additional work was performed because of Academy's counterclaims and Academy's joining Stuckey as a third-party defendant. Additionally, the parties could not agree on the issues and Turnkey filed a motion for summary judgment.

Womac's billing rate was $150 per hour and his associates' billing rate was $100 per hour. Based on his experience and familiarity with fees other attorneys charge for this type of work on similar cases, Womac believes their fees are reasonable and that $150,000 is the amount reasonable and necessary to the prosecution of Turnkey's claims through trial, $20,000 for appeal to the court of appeals, $5,000 in the event that review is sought in the Texas Supreme Court, and $5,000 if review is granted. Under the factors set forth in *Perry Equip. Corp.*, we find this to be more than a scintilla of evidence in support of the judgment awarding Turnkey attorney's fees.

■■■■ Academy further complains that the jury was not instructed on the eight factors or that Turnkey needed to establish all eight factors to recover attorney's fees. A review of the record reflects that while Academy objected to the charge on the basis of legal insufficiency of the evidence, it did not object to the charge for failing to instruct the jury on the *Perry Equip. Corp.* factors, but instead, waited to object on this basis in its motion for judgment n.o.v. and motion for new trial. To preserve error in the jury charge, a party must make the trial court aware of the complaint, timely and plainly, and obtain a ruling. *See State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992). Objections must be made before the charge is read to the jury. *See Missouri Pac. R.R. Co. v. Cross*, 501 S.W.2d 868, 873 (Tex.1973); *Operation Rescue–Nat'l v. Planned Parenthood of Houston & S.E. Tex., Inc.*, 937 S.W.2d 60, 69 (Tex.App.-Houston [14th Dist.] 1996),

*aff'd as modified on other grounds*, 975 S.W.2d 546 (Tex.1998). By not objecting to the failure to instruct the jury on the *Perry Equip. Corp.* factors prior to the charge being submitted to the jury, Academy has waived any error with regard to this complaint.

Academy also asserts that the trial court erred in excluding expert testimony, which it claims shows that Turnkey's attorney's fees were unreasonable. According to Academy, such evidence established that: (1) Turnkey's objections to Academy's discovery were unreasonable; (2) Turnkey failed to confer with Academy's trial counsel prior to filing discovery motions; and (3) summary judgment issues could have been resolved by stipulation.

With respect to Academy's claims that Turnkey's discovery requests were unreasonable, the trial judge responded that no unnecessary motions were filed in this case, and that she encourages the parties to seek protection from, and present their discovery objections to, the court. She further informed Academy that she did not find that any lawyer's conduct in this case was improper. In any event, a review of the record establishes that Academy was allowed to cross-examine Womac about Turnkey's unsuccessful objections to Academy's pretrial discovery. A copy of the trial court's order ordering Turnkey to turnover a number of documents and answer certain interrogatories, and ordering the continuation of the depositions of two of Turnkey's witnesses, which had ceased on Turnkey's objections, was admitted into evidence.

 With respect to Academy's claim that Turnkey's counsel failed to confer with opposing counsel before filing motions, the trial judge reminded Academy that she does not require a certificate of conference for motions filed in her court and, therefore, there was no violation of that rule. Finally, with respect to Academy's claim that certain issues could have been resolved by stipulation rather than by summary judgment, a review of the record does not show that Academy at-

tempted to introduce, or objected to the exclusion of, that evidence. Academy has waived this complaint. *See* Tex. R. App. P. 33.1.

In sum, the trial court refused to permit testimony regarding discovery practices which were not found to be abusive or in violation of any rules. Such matters are properly within the trial court's authority to control its docket. Therefore, we find that the trial court did not abuse its discretion in excluding the above evidence. Academy's seventh issue is overruled.

### VIII. Academy's Attorney's Fees

In its eighth and ninth issues, Academy claims that the jury's refusal to award it attorney's fees was based, in part, on the trial court's having erroneously excluded Academy's expert witness testimony regarding the actions its own attorney's had to take in response to Turnkey's "improper efforts to stymie Academy's discovery" and "excessive and unnecessary motions for summary judgment." Academy further challenges the jury's failure to award it any attorney's fees as legally insufficient or, in the alternative, against the great weight and preponderance of the evidence.

 In Texas, attorney's fees are recoverable only by statute or by contract. *See Jackson v. Biotectronics, Inc.*, 937 S.W.2d 38, 44 (Tex.App.-Houston [14th Dist.] 1996, no writ). Because attorney's fees are not recoverable on tort claims, the only basis upon which Academy could have recovered attorney's fees was on its breach of contract claim pursuant to Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1997). *See Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 243–44 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (stating that attorney's fees are not recoverable on tort claims); *Villasenor v. Villasenor*, 911 S.W.2d 411, 420 (Tex.App.-San Antonio 1995, no writ) (same). To recover attorney's fees under § 38.001, the party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. *See Green Int'l,*

744

*Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997); *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 437 (Tex.1995).

Here, Academy did not recover on any of its claims and was not awarded any damages and, therefore, is not entitled to recover attorney's fees. Because of our disposition of Academy's other issues and of this case, we need not address Academy's challenge to the exclusion of its expert testimony. Academy's eighth and ninth points of error are overruled.

### IX. Prejudgment Interest

In its tenth issue, Academy contends the trial court erred in calculating prejudgment interest. The judgment provides that the prejudgment interest began to accrue on August 23, 1996, at a rate of 10% per annum.

Neither the San Antonio contract nor the League City contract specifies the rate of interest at which prejudgment interest on damages is to be calculated. When the underlying contract does not specify the rate of interest, the rate of prejudgment interest is calculated at a rate of 6% if the amount payable can be ascertained. *See* Tex. Fin. Code Ann. § 302.002 (Vernon Supp.2000). A contract is one "ascertaining the sum payable" when it provides the conditions upon which liability depends and fixes a measure by which the sum payable can be ascertained with reasonable certainty, in light of the attending circumstances. *See Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 950 S.W.2d 371, 372–73 (Tex.1997). On the other hand, if the amount payable cannot be ascertained from the contract, prejudgment interest accrues at a rate of 10%. *See* Tex. Fin. Code Ann. § 304.003 (Vernon Supp.2000).

We conclude that the sum due and payable to Turnkey is ascertainable from the contracts.[4] Therefore, the 6% interest rate set forth in § 302.002 is the correct rate, and the trial court erroneously calculated prejudgment interest at a rate of

10%. Section 302.002 further provides that prejudgment interest begins to accrue thirty days after the date the amount becomes due and payable. The amount owed to Turnkey was due and payable as of July 24, 1996; therefore, August 23, 1996, is the correct date from which to begin calculating interest. Academy's tenth issue is sustained.

### X. Conclusion

We remand the prejudgment interest portion of this case to the trial court to recalculate the prejudgment interest in accordance with this opinion at a rate of 6% interest, starting from August 23, 1996, and affirm the remainder of the judgment. Accordingly, the judgment of the trial court is affirmed, in part, and reversed and remanded, in part.

---

**4.** Turnkey conceded in its brief to this court that the amount was ascertainable from the contracts in accordance with Tex. Fin. Code Ann. § 302.002.