Opinion issued December 23, 2014



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00675-CV

————————————

**ADENRELE OLADAPO JIMOH, Appellant**

**V.**

**JOSHUA NWOGO AND LINDA NWOGO, Appellees**

———

**On Appeal from the County Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1020002**

———

## MEMORANDUM OPINION

Appellant, Adenrele Oladapo Jimoh, challenges the trial court's judgment entered in favor of appellees, Joshua Nwogo and Linda Nwogo (collectively, the "Nwogos"), in their suit against her for breach of contract. In two issues, Jimoh

contends that the trial court erred in awarding the Nwogos certain damages and attorney's fees.

We affirm.

## Background

After Jimoh withdrew from representing them as their attorney in an immigration matter, the Nwogos filed a pro se petition, alleging breach of contract against Jimoh in a justice court. In their petition, the Nwogos requested $5,000 in damages, the amount they paid Jimoh for "all . . . services relating to . . . [an] [a]sylum [a]pplication," and the costs associated with their suit. Jimoh counterclaimed, seeking the "balance of the [parties'] contract" and attorney's fees. The justice court ordered that the Nwogos take nothing on their claim and Jimoh take nothing on her counterclaim. The Nwogos then appealed to the county court below for a trial de novo.

At trial in the county court, Joshua testified that on December 4, 2007, he moved from Nigeria to Houston and subsequently sought help from Jimoh to obtain asylum in the United States. On June 12, 2008, he signed a contract with Jimoh for legal representation related to his asylum application. Joshua believed, pursuant to their agreement, that he was to pay Jimoh a "flat fee" of $5,000 for "representation until [his] asylum case [was] over," i.e., the $5,000 "flat fee" covered "the entire process." Although the contract does contain a provision that

2

"[t]he amount of the Attorney's fee is understood to be $175," Joshua explained that he and Jimoh never discussed payment in terms of an hourly rate. Rather, she told him that the $175 provision "d[id] not concern [him]." Jimoh also "canceled the retainer part" of the agreement that provides, the "[c]lient shall deposit a _**NON-REFUNDABLE**_ retainer in the amount of $5,000.00." Thus, Joshua paid her the $5,000 "flat fee."

Jimoh then submitted Joshua's asylum application, which, according to him, contained several mistakes. The application was ultimately "deemed not credible" and "referred to an immigration judge" for an "evaluat[ion] . . . [of the asylum] claim anew." Following the "deni[al]" of his application, Jimoh told Joshua that the $5,000 that he "paid [was] for the administrative hearing" and "if [he] want[ed] to retain her as [his] lawyer . . . to represent [him] at immigration court," he would "have to agree . . . [to pay an] additional $3,000." Jimoh further stated that if he could not pay her, she would "not continu[e] with the case" and would "withdraw."

Joshua did not pay Jimoh the additional $3,000. And although she withdrew her representation, Joshua did not receive notice of Jimoh's withdrawal until after it had been filed in the immigration court because, according to him, it was sent to the wrong address. At the time of Jimoh's withdrawal, Joshua had "less than 30 days" to submit a new asylum application to the immigration court, and he "ha[d] to" retain a new lawyer to represent him, which cost the Nwogos $3,000.

3

Jimoh testified that she began representing the Nwogos in June 2008, when Joshua approached her about his asylum claim. She and Joshua entered into a contract wherein he agreed to pay her a nonrefundable "$5,000 retainer" for her "to submit his asylum claim to the administrative office of . . . immigration." She noted that she "never charge[s] [her clients] a flat fee"; instead, she "always charge[s] a retainer," unless she is representing a client in a contingency-fee case. Jimoh "explain[ed] to [Joshua] what [her] retainer consisted of" and "what it meant." According to Jimoh, when she "obtain[s] a retainer from a client, [she] bills at an hourly rate," and "[w]hen [she] exhaust[s] those funds, [she] sit[s] down with [her] client" and explains that the client may "make a further deposit" or "pay[] at an hourly rate instead of putting a[nother] deposit down." Accordingly, she charged Joshua an hourly rate of $175.

Jimoh explained that she struck through the parts of the contract "pertain[ing] to criminal cases or . . . cases that might be taken on appeal" and that were not applicable to Joshua's case.[1] She did not strike "the [$5,000] nonrefundable retainer" provision; instead, she "kept" it in the contract.

---

[1] The stricken provisions of the contract would have provided as follows:

> Client agrees to pay for the pretrial stage of this case, not including preparation, filing, and presenting pretrial motions, in the amount $0, payable now. If it is necessary to have a trial to the jury on the charges, Client agrees to pay an additional fee of $TBD for the preparation of the trial and for the actual trial, including pretrial motions, pretrial hearings, and all other things necessary for a proper

In the course of her representation of the Nwogos, Jimoh submitted Joshua's asylum application. Although the application was returned to her because "portions of the application . . . were not filled out," Jimoh made the necessary corrections. Subsequently, Joshua had an asylum hearing with an administrative officer. Following the hearing, Joshua's asylum application was not denied, but rather referred to the immigration court for a determination of whether he "ha[d] a credible case." At this point, Jimoh informed Joshua that she had not yet "exhausted" the $5,000 retainer, but would tell him when she did. Jimoh then made two appearances in the immigration court on Joshua's behalf.

Jimoh had difficulty contacting Joshua and meeting with him regarding the upcoming deadlines in his immigration case. By January 2009, the initial $5,000 retainer was exhausted. When she tried to discuss this matter with Joshua, he told her: "I'm not going to pay you anymore [money]." Jimoh then decided to withdraw from representing him because he was not willing to continue paying her and she had experienced difficulty in trying to contact him and obtaining the necessary documentation for his immigration case. She sent Joshua a copy of her

---

defense. . . . It is expressly agreed and understood that the above fee does not include: a. Any appeal which may be taken to a Court of Appeals or to the Court of Criminal Appeals, nor does it include a petition for discretionary review to the Court of Criminal Appeals or any other form of appellate review, whether in state or federal court[.]

withdrawal motion after filing it with the immigration court, and he did not oppose the withdrawal in the immigration court.

Jimoh explained that Joshua failed to pay her any money beyond the nonrefundable $5,000 retainer and, under their contract, he still owes her money. In total, she spent 28.86 hours on Joshua's case; however, 4.5 of these hours were billed after she had decided to withdraw.

Laban Opande, the Nwogos' attorney in the instant case, testified that the Nwogos retained him to represent them in the county court below, and he charged them a $5,000 "flat fee" for the trial of their case. He explained that the $5,000 fee was "reasonable" and "fair and equitable considering the amount of work that [he] . . . spent in preparing the case."

After hearing the witnesses, the trial court entered judgment in favor of the Nwogos, awarding them $737 "as damages on the original fee paid to [Jimoh]," $3,000 "as damages subsequently incurred by [the Nwogos] in hiring other representation" for the immigration case, and $5,000 for attorney's fees. It further ordered that Jimoh take nothing on her counterclaims. Jimoh then filed a motion for new trial, which the trial court denied.[2]

---

[2] The appellate record does not contain a reporter's record from a hearing on Jimoh's motion, nor does it indicate whether the trial court held a hearing on the motion.

**Damages**

In her second issue, Jimoh argues that the trial court erred in awarding the Nwogos damages of $3,000, the amount that they paid to the attorney handling the immigration case after Jimoh's withdrawal, because

> no authority . . . supports the court's ruling that [a] withdrawing attorney should reimburse her former clients for the fees paid to their new attorney for continuing a case, especially when [the] fees were not prayed for in the pleading[s] . . . [and] in light of the fact that [the] withdrawing counsel fully or substantially performed.

Jimoh further asserts that "[o]rdering a former attorney to pay for [a] client's new lawyer greatly offends public policy."

An appellant's brief must contain a clear and concise argument for the contentions made with appropriate citations to the authorities and to the record. *See* TEX. R. APP. P. 38.1(i). Failure to cite applicable authority waives an issue on appeal. *See Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *Richard v. Cornerstone Constructors, Inc.*, 921 S.W.2d 465, 469 (Tex. App.—Houston [1st Dist.] 1996, writ denied) ("[A] point of error unsupported by the citation of any authority presents nothing for this Court to review."); *see also Saudi v. Brieven*, 176 S.W.3d 108, 120 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding appellant's failure to cite authority and provide analysis in initial brief waived issue on appeal).

Jimoh cites no authority in her brief to support her argument that the trial court erred in awarding the Nwogos damages for the amount that they paid to the attorney handling the immigration case after Jimoh had withdrawn her representation. Accordingly, we hold that Jimoh has waived her second issue. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (noting appellate courts have discretion to deem issues waived due to inadequate briefing).

## Attorney's Fees

In her first issue, Jimoh argues that the trial court erred in awarding the Nwogos $5,000 in attorney's fees to prosecute the instant case because they failed to plead for attorney's fees in the justice court, only requested $1,500 in attorney's fees in their county court pleadings, "failed to produce evidence that the attorney['s] fees of $5,000.00 was reasonable or . . . 'usual and customary,'" and did not present a demand for attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.002 (Vernon 2008) ("To recover attorney's fees [for breach of contract]: (1) the claimant must be represented by an attorney; (2) the claimant must *present* the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented." (emphasis added)).

8

In response, the Nwogos argue that Jimoh did not properly preserve this issue for appeal because she "did not object to the submission of attorney's fees" and her motion for new trial was "ambiguous on its face and not specific enough as to give notice . . . of what was being complained of."

As a prerequisite to presenting a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion . . . with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a). This is true of an alleged trial error regarding an attorney's fees award because such error is not fundamental. *See Kelly v. Brenham Floral Co.*, No. 01-12-01000-CV, 2014 WL 4219448, at \*4 (Tex. App.—Houston [1st Dist.] Aug. 26, 2014, no pet.) (mem. op.); *Tex. Dep't of Pub. Safety v. Burrows*, 976 S.W.2d 304, 307 (Tex. App.—Corpus Christi 1998, no pet.). However, "[i]n a nonjury case, a complaint regarding" the sufficiency of the evidence to support attorney's fees "may be made for the first time on appeal"; thus, no "timely request, objection, or motion" to the trial court is required. *See* TEX. R. APP. P. 33.1(a), (d); *Nelson v. Najm*, 127 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("It is well settled that challenges to the sufficiency of the evidence in nonjury cases may be raised for the first time on appeal.").

Jimoh advances several arguments on appeal regarding the trial court's award of attorney's fees. To the extent that Jimoh's complaints relate to the sufficiency of the evidence to support the $5,000 award, she may advance the complaints, regardless of whether she first presented them to the trial court.[3] *See* TEX. R. APP. P. 33.1(d). However, to the extent that Jimoh raises other complaints about the award of attorney's fees on appeal, namely, that the Nwogos failed to plead for attorney's fees in the justice court, only requested $1,500 in attorney's fees in their county court pleadings, and did not present a demand for attorney's fees in accordance with section 38.002, we must consider whether she preserved the complaints "by a timely request, objection, or motion." *See* TEX. R. APP. P. 33.1(a).

At trial, Jimoh did not object to the testimony of Opande, the Nwogos attorney in the instant case, about his fees, including his testimony as to their amount and reasonableness. And, although Jimoh filed a motion for new trial, she did not specifically complain about the trial court's award of attorney's fees or make the complaints she now attempts to advance on appeal. *See, e.g.*, *Coleman v. Coleman*, No. 01-09-00615-CV, 2010 WL 5187612, at *2 (Tex. App.—Houston

---

[3] On appeal, Jimoh argues that the Nwogos "failed to produce evidence that the attorney['s] fees of $5,000.00 was reasonable or . . . 'usual and customary.'" *See Atl. Shippers of Tex., Inc. v. Jefferson Cnty.*, 363 S.W.3d 276, 285 (Tex. App.—Beaumont 2012, no pet.) (concluding defendant entitled to complain that "court awarded an unreasonable attorney ad litem fee" for first time on appeal).

10

[1st Dist.] Dec. 23, 2010, no pet.) (mem. op.) ("Presentment [issue] must be raised at the trial court to be preserved on appeal."); *Robertson v. Gregg Cnty.*, No. 06-09-00062-CV, 2009 WL 2971763, at *1–2 (Tex. App.—Texarkana Sept. 18, 2009, no pet.) (mem. op.) ("Although judgment cannot generally be awarded for an amount greater than that raised by the pleadings, such a matter may be waived if a complaint is not properly preserved."); *Burrows*, 976 S.W.2d at 307 (concluding complaint plaintiff did not request attorney's fees in pleadings waived when not raised in motion for rehearing or motion for new trial).

Because Jimoh, in her motion for new trial, did not specify that she intended to challenge the trial court's award of attorney's fees on the grounds that the Nwogos failed to plead for them in justice court, only requested $1,500 in attorney's fees in their county court pleadings, and did not "present" their attorney's fees demand, we hold that Jimoh has not preserved these complaints for appellate review. *See* TEX. R. APP. P. 33.1(a).

In regard to Jimoh's remaining sufficiency-of-the-evidence complaint, we review the amount of attorney's fees awarded under a legal-sufficiency standard. *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 671 (Tex. App.—Austin 2006, no pet.). In conducting our legal-sufficiency review, we consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *City of Keller v. Wilson*,

11

168 S.W.3d 802, 822 (Tex. 2005). If more than a scintilla of evidence supports the challenged finding, the legal-sufficiency challenge fails. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *see also Lundy v. Masson*, 260 S.W.3d 482, 491 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (when party challenges sufficiency of evidence supporting adverse finding on issue on which she did not have burden of proof, party must demonstrate no evidence supports adverse finding).

In determining the reasonableness of attorney's fees, the following factors may be considered: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or the uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). A factfinder is not required to consider all of these factors in every case; they simply constitute guidelines to

be considered, not elements of proof. *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 567 (Tex. App.—Austin 2004, no pet.); *Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Thus, it is not necessary that the record include evidence on each of the factors. *See Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 897–98 (Tex. App.—Dallas 2003, no pet.); *Acad. Corp.*, 21 S.W.3d at 742.

In addition to the above enumerated factors, judges may consider the entire record and draw upon their common knowledge and experience as lawyers and judges. *See In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.); *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App.—Houston [1st Dist.] 2004, no pet.). And when a claim for attorney's fees is based on chapter 38, it is presumed that the usual and customary fees are reasonable, although the presumption may be rebutted. TEX. CIV. PRAC. & REM. CODE ANN. § 38.003 (Vernon 2008).

Opande testified that he has been a licensed attorney in Texas for "the last six years." He practices in Houston in the "areas of civil litigation, criminal defense and immigration" and has represented "several hundreds of clients." Generally, Opande charges clients "either [a] retainer fee or [a] flat fee," depending on the case. Here, he negotiated with the Nwogos a "flat fee" of $5,000, if their

13

case went to trial. If the Nwogos' case "had not gone to trial," he would have charged them a "flat fee" of $1,500. Opande and the Nwogos signed a contract reflecting the fee arrangement; however, it was not admitted into evidence. At the time of trial, the Nwogos had paid Opande "a total of $1,500" and had an "outstanding" balance of $3,500 due.[4]

Although Opande charges certain clients an "hourly rate," he explained that it "varie[s] . . . depending on the client . . . [and] the complexity of the matter." Here, he did not charge the Nwogos an hourly rate because he "charg[ed] [them] a flat fee." And he did not "count[] the hours" that he spent on the case, keep "time slips," or create a "billing statement" because of the "flat fee" arrangement.

Opande further testified that a fee of $5,000 was "reasonable" and "fair and equitable" for the Nwogos' case because he "spen[t] several hours [doing] consultation, several hours . . . review[ing] documents[,] and . . . several hours [in] court represent[ing]" them.

Jimoh argues that the trial court's award of attorney's fees is not reasonable because the Nwogos did not produce a "contract and billing statement for $5,000.00," "[t]he only testimony" was from the Nwogos' attorney, "[t]he award of $5,000.000 does not bear a reasonable relationship to the amount of $737.00 [in

---

[4] The trial court admitted into evidence receipts reflecting the Nwogos' payments to Opande.

damages] found by the court," and the testimony presented did not "articulate . . . the factors required to prove reasonableness."

Initially, we note that an attorney is qualified to testify regarding his own fees. *See, e.g.*, *Harrison v. Gemdrill Int'l., Inc.*, 981 S.W.2d 714, 719 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (upholding attorney's fees award as matter of law based on attorney's testimony regarding his own fees). And, although the Nwogos did not introduce into evidence their contract with Opande, any "time slips," or a "billing statement" containing the hours that Opande worked, such "[d]ocumentary evidence . . . is not a prerequisite to an award of attorney['s] fees." *See In re A.B.P.*, 291 S.W.3d 91, 99 (Tex. App.—Dallas 2009, no pet.) (holding evidence sufficient to support attorney's fees award, although attorney's "fee agreement or billing statements" not submitted); *see also Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892–93 (Tex. App.— Austin 2010, pet. denied) (rejecting suggestion "that only fee bills . . . would be sufficient evidence of attorney['s] fee amounts"); *Hays & Martin, L.L.P. v. Ubinas–Brache, M.D.*, 192 S.W.3d 631, 636 (Tex. App.—Dallas 2006, pet. denied) (explaining "the nature and extent of the [attorney's] services performed . . . [need not be] expressed by the number of hours and the hourly rate"); *Cashin v. Jackson*, No. 13-00-049-CV, 2001 WL 34615336, at *3 (Tex. App.—Corpus Christi no pet.) (not designated for publication) ("It is proper for an

15

attorney to charge a lump sum or flat fee for a case rather than on an hourly basis.").

In regard to Jimoh's assertion that the trial court's $5,000 attorney's fees award "does not bear a reasonable relationship" to the Nwogos' damages award, we note that the trial court awarded the Nwogos $3,737 in damages, not $737 as asserted by Jimoh. Further, Jimoh does not explain how the fee award in this case "does not bear a reasonable relationship" to the damages awarded. At most, she appears to argue that the attorney's fee award "does not bear a reasonable relationship" to the damages awarded because it constitutes a greater sum of money. However, there is no legal rule that an attorney's fees award may not exceed a damages award; and, in circumstances where it does, this fact does not render such an attorney's fees award unreasonable. *See Bundren v. Holly Oaks Townhomes Ass'n*, 347 S.W.3d 421, 441 (Tex. App.—Dallas 2011, pet. denied); *see also Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 684–85 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (rejecting argument "that the award of attorney's fees was unreasonable because they were excessive with respect to the amount in controversy").

Here, the trial court heard evidence that, based on Opande's experience in performing similar legal services in the same locality, a fee of $5,000 was "reasonable" because of the work done by Opande. *See Metroplex Mailing Servs.,*

16

*LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) ("It has consistently been held that an attorney's testimony about his experience, the total amount of fees, and the reasonableness of the fees charged is sufficient to support an award."); *see also In re M.A.N.M.*, 231 S.W.3d at 567–68 (affirming award of attorney's fees where attorney did not testify about his hourly rate or number of hours spent on case, but did testify as to reasonableness of fees). The trial court also heard evidence regarding Opande's experience, the nature of the Opande and Nwogos fee arrangement, and the amount in controversy. *See Arthur Andersen*, 945 S.W.2d at 818. And Jimoh presented no evidence controverting or rebutting the Nwogos' evidence that Opande's fees were reasonable.

Because there is more than a scintilla of evidence supporting the trial court's award of attorney's fees, we hold that the evidence is sufficient to support the award.

We overrule Jimoh's first issue.

17

**Conclusion**

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Massengale.