**Captain Sheriff SAUDI, Appellant,**

v.

**Captain Ivo BRIEVEN, Appellee.**

No. 01–03–00865–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 28, 2004.

110

Afton J. Izen, Joe A. Izen, Jr., Bellaire, for Appellant.

Kyle Douglas Giacco, Coastal Banc Plaza, Willie Ben Daw, III, Daw & Ray, A Professional Corp., Houston, for Appellee.

Panel Consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

TIM TAFT, Justice.

This is the second appeal in this lawsuit. Appellant, Captain Sheriff Saudi, sued appellee, Captain Ivo Brieven, for defamation (libel and slander), intentional interference with employment relations ("intentional-interference claim"), and intentional infliction of emotional distress ("IIED"). The trial court granted Brieven's motion for summary judgment and rendered a take-nothing judgment against Saudi. The Fourteenth Court of Appeals reversed the judgment and remanded the cause because fact issues existed on Saudi's defamation claims. *See Saudi v. Brieven,* 14–01–00785–CV, 2003 WL 1989112 (Tex.App.-Houston [14th Dist.] May 1, 2003, no pet.)

(memo.op.). On remand, Brieven reasserted his summary judgment motion, and the trial court granted it, again rendering a take-nothing judgment against Saudi. In this second appeal, we determine whether (1) the trial court's summary judgment was void and (2) Brieven proved his affirmative defense of qualified privilege to Saudi's defamation claims as a matter of law. We affirm.

## Background

This dispute arose from a relationship among I.B. Marine Services ("IBMS"), American Eagle Tankers ("American"), and Industrial Material Corporation ("Industrial"). Brieven either owned, or operated and was an officer of, IBMS. American employed Saudi as a mooring master.

The summary judgment evidence on remand showed two incidents from which Saudi's defamation claims could have arisen. First, at a meeting held on June 18, 1998 between IBMS and American employees, Brieven told these third parties that Saudi engaged in waking the boat crew at inappropriate times and for inappropriate purposes and called one surveyor a "stupid American."

Second, in September 1998, Brieven's port engineer informed Brieven that he had learned that someone matching Saudi's description had purchased hooks from Industrial and had charged the purchase to IBMS's account without authorization. The purchaser also appeared to have stolen some items. Brieven then contacted Captain Violetta, Saudi's supervisor at American; related the accusations to him; specifically accused Saudi of the purchase; and asked if a procedure could be instituted in the future that would let Brieven know when mooring masters charged items to IBMS's account. When Violetta later called Brieven to confirm the allegation because Saudi continuously had denied it, Brieven told Violetta, "Yes, I am sure. [Saudi] is a liar. He is lying through his teeth." In fact, American never had authorized its mooring masters to purchase items on IBMS's account, and Brieven's accusations against Saudi concerning the purchase eventually were determined to be false.

Saudi sued Brieven, asserting defamation, intentional-interference, and IIED claims arising from the September 1998 phone call to Violetta and from unspecified incidents in which Brieven allegedly "made false accusations against [Saudi] to third parties in an effort to create hate and resentment between the 'boat crew' and [Saudi]. . . ." Brieven moved for summary judgment against all claims, specifically asserting the affirmative defense of qualified privilege to the defamation claims. The trial court originally rendered judgment against each of Saudi's three claims. In the first appeal, the Fourteenth Court of Appeals (1) held that the trial court had erred in rendering summary judgment on Saudi's defamation claims; (2) held that the trial court had properly rendered summary judgment on Saudi's intentional-interference claim; and (3) did not address the summary judgment rendered on Saudi's IIED claim. *Id.* at *3–6. The appellate court reversed the entire judgment and remanded the cause without limitation.

■ On remand, Brieven reasserted his entire summary judgment motion, which addressed all three claims, and requested a written ruling on his objections to Saudi's summary judgment evidence. In response, Saudi reurged his original summary judgment response and tendered two more affidavits in support, to which Brieven also objected. The trial court sustained Brieven's objections to Saudi's evidence, in effect striking most of Saudi's four affidavits' testimony; granted Brieven's sum-

mary judgment motion; and rendered a take-nothing judgment against Saudi.[1]

### Jurisdiction

In part of his sole issue, Saudi argues that the trial court's summary judgment is void for having been rendered after the appellate court had issued its judgment, but before it had issued its mandate. Brieven responds that the trial court had jurisdiction to render judgment and, alternatively, that Saudi either waived his challenge or is estopped from asserting it.

The Fourteenth Court of Appeals's opinion and judgment issued on May 1, 2003. The trial court rendered summary judgment on July 21, 2003, without objection by Saudi. The appellate court's mandate issued August 7, 2003.

 "Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel at any stage of a proceeding." *Tourneau Houston, Inc. v. Harris County Appraisal Dist.*, 24 S.W.3d 907, 910 (Tex. App.-Houston [1st Dist.] 2000, no pet.) (citing *Fed. Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943)). Lack of subject-matter jurisdiction is fundamental error that may be recognized by the appellate court, sua sponte, or raised by a party, by appellate challenge, for the first time on appeal. *See id.; Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 n. 6 (Tex.App.-Houston [1st Dist.]

2002, no pet.) ("In an appeal properly before it, an appellate court may always address fundamental error, even without an appellate challenge."). "A judgment is void only when it is apparent that the court rendering judgment 'had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.' Errors other than lack of jurisdiction render the judgment merely voidable. . . ." *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex.1987) (quoting *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985)). Accordingly, the trial court's summary judgment is void, and Saudi may assert his challenge for the first time on appeal, only if the court lacked subject-matter jurisdiction at the time of the judgment's rendition.

 The Rules of Appellate Procedure and Texas Supreme Court jurisprudence support Brieven's position, not Saudi's.

### A. The Rules

As of September 1, 1997, the Rules of Appellate Procedure provide that an appellate court's plenary power over its judgment expires "(a) 60 days after judgment if no timely filed motion to extend time or motion for rehearing is then pending; or (b) 30 days after the court overrules all timely filed motions for rehearing and motions to extend time to file a motion for

---

1. Even if the law-of-the-case doctrine did not preclude adjudication of Saudi's intentional-interference claim on remand, Saudi does not assert an appellate challenge pertinent to that portion of the judgment, and we thus affirm the judgment rendered on that claim without regard to the merits. *See Garcia v. Nat'l Eligibility Express, Inc.*, 4 S.W.3d 887, 889 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993)); *see also Hudson v. Wakefield*, 711 S.W.2d 628 630 (Tex.1986).

Because the Fourteenth Court of Appeals made no holding concerning Saudi's IIED

claim, reversed the entire summary judgment, and remanded the cause without limitation, that claim was before the trial court upon remand. *See Hudson*, 711 S.W.2d at 630–31. The trial court necessarily rendered summary judgment on that claim by granting Brieven's motion. However, Saudi does not challenge on appeal the summary judgment rendered on his IIED claim. Accordingly, we affirm the trial court's judgment to the extent that it disposed of Saudi's IIED claim. *See Garcia*, 4 S.W.3d at 889.

rehearing...." TEX.R.APP. P. 19.1. No one in this cause moved for rehearing in the court of appeals. Accordingly, the Fourteenth Court of Appeals's plenary power expired on July 1, 2003, 60 days after its judgment issued. *See id.*

Under separate rules, the appellate court must issue its mandate in a civil case when, for example (and absent the parties' agreement otherwise), 10 days have passed (1) since the deadline expired for filing a motion to extend time to file a petition for review in the Supreme Court (a) if no timely petition for review has been filed and (b) if no timely motion for extension of time to file a petition for review is pending or (2) since the deadline expired for filing a motion to extend time to file a motion for rehearing of a denial, refusal, or dismissal of a petition for review, if no timely filed motion for rehearing or extension is pending. TEX.R.APP. P. 18.1(a)(1)-(3). Here, no one filed a petition for review or a motion for extension of time to file one.

■ Generally speaking, and with certain exceptions inapplicable here,[2] once an appeal has been perfected and the trial court's plenary power to perform certain acts after appeal has expired, the appellate court acquires exclusive plenary jurisdiction over the cause. *See Robertson v. Ranger Ins. Co.*, 689 S.W.2d 209, 210 (Tex. 1985); *see also* TEX.R. CIV. P. 329b(d), (e) (granting trial court plenary power to perform certain acts despite appeal's perfection); TEX.R.APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."). The court of appeals's plenary jurisdiction ends, however, as provided in Rule of Appellate Procedure 19. In contrast, rule 18 concerns the issuance and return of mandate, but does not gov-

ern the appellate court's plenary power. A comparison of rules 18 and 19 thus demonstrates that rule 18 is procedural, rather than jurisdictional, in nature. Furthermore, the appellate rules provide that "[a]fter its plenary power expires, the [appellate] court cannot vacate or modify its judgment. But the court may: ... (b) issue and recall its mandate as these rules provide." TEX.R.APP. P. 19.3(b). Since rule 19's adoption, the fact that the rules allow the appellate court to issue and to recall its mandate *after* the appellate court's plenary power expires indicates that it is not the mandate's issuance that generally reinvests the trial court with jurisdiction, but, instead, the termination of plenary power in the appellate court under rule 19.1.

In support of his position, Saudi relies on Rule of Appellate Procedure 18.7, which provides:

> If an appellate court vacates or modifies its judgment or order after issuing its mandate, the appellate clerk must promptly notify the clerk of the court to which the mandate was directed and all parties. The mandate will have no effect and a new mandate may be issued.

TEX.R.APP. P. 18.7. Contrary to Saudi's contention, rule 18.7 says nothing about reinvesting a trial court with jurisdiction, and it does not support him.

**B. The Case Law**

Case law supports our reading of the rules. In 1963, the Texas Supreme Court held that the statutes and rules concerning the mandate's return are "primarily procedural in nature ...," rather than jurisdictional. *Continental Cas. Co. v. Street*, 364 S.W.2d 184, 187 (Tex.1963). In *Street*, the court of civil appeals held that the trial

---

**2.** *See, e.g.,* TEX.R.APP. P. 24.3 (concerning trial court's jurisdiction to perform certain acts relating to post-judgment security after trial court's plenary power has expired).

court's judgment was void because the trial upon which judgment was rendered had been held before the appellate court's mandate had been returned. *Id.* at 186. The Texas Supreme Court reversed the court of civil appeals:

The rules relating to the return of the mandate from the appellate to the trial court are taken from predecessor statutes.... *These statutes were construed as being primarily procedural in nature.* They provide for an orderly dispatch of judicial business by adopting procedures under which both the appellate and trial courts may have knowledge of the status of pending litigation and thus prevent the issuance of conflicting orders by the courts of the trial and appellate levels. *In the absence of an actual interference with the appellate court's authority over a case, the provisions relating to the return of the mandate do not appear to have been regarded as jurisdictional in the sense that any action taken by a trial court before the return of the mandate must be considered a nullity.*

. . .

It is recognized that prior to the issuance of a mandate the appellate court retains a species of jurisdiction of a case although it has rendered its judgment and overruled a motion for rehearing and that a writ of prohibition may issue to the trial court forbidding it to proceed to trial before the appellate court has issued its mandate.... *In order to properly preserve the complaint of procedural irregularity in proceeding to trial before the return of the mandate, it is necessary that proper objection be made in the trial court, or that application for*

*prohibition be made to the Court of Civil Appeals. It is only when there is an actual interference with the appellate court's active power and authority over the case by a trial court order that the same can be considered void so as to constitute a fundamental error.*

*Id.* at 187–88 (footnotes omitted; citations omitted; emphasis added); *accord Universe Life Ins. Co. v. Giles*, 982 S.W.2d 488, 491 (Tex.App.-Texarkana 1998, pet. denied) (following *Street*). As with the language of current rule 18, the language of rule 18's predecessors that were considered by the *Street* court was also procedural.[3] *See Street*, 364 S.W.2d at 187–88 & 187 n. 2. The Texas Supreme Court affirmed the continued validity of *Street* in *Brazzel v. Murray*, 481 S.W.2d 801, 803 (Tex.1972), in which the court stated, "The Texas Rules of Civil Procedure dealing with the issuance and return of the mandate subsequent to judgment of remand in the Court of Civil Appeals are procedural in nature and not necessary to the jurisdiction of the trial court."

Some commentators have suggested that two subsequent Texas Supreme Court opinions implicitly overrule *Street* and *Brazzel. See* Stacy Obenhaus, *It Ain't Over 'Til It's Over: The Appellate Mandate in Texas Courts,* The Appellate Advocate, Vol. XV, No. 4, at 7 & 7 n. 31 (Winter 2003) (stating same expressly); *see also* 6 ROY W. McDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 46:5 (2nd Ed.1998) (citing to two opinions issued after *Street* and *Brazzel* to support statement that "[o]nce an opinion is issued, jurisdiction over the subject matter involved in the appeal remains in the appel-

**3.** *See* TEX.R. CIV. P. 442, 3 TEX. B.J. 595 (1940, amended 1943, 1977, & 1983, repealed 1986); TEX.R. CIV. P. 443, 3 TEX. B.J. 595 (1940, amended 1941, 1972, 1977, & 1980, repealed 1984); TEX.R. CIV. P. 444, 3 TEX. B.J. 595 (1940, repealed 1984); TEX.R. CIV. P. 445, 3 TEX. B.J. 595 (1940, amended 1977, repealed 1986).

late court until the mandate has issued by that court."). We disagree.

The first opinion cited as having implicitly overruled *Street* and *Brazzel* is *Robertson v. Ranger Insurance Co.*, 689 S.W.2d 209 (Tex.1985). In *Robertson*—which mentioned neither *Street* nor *Brazzel*—the court held void a post-settlement consent judgment that the trial court rendered while a rehearing motion in the same cause was still pending before the Texas Supreme Court. *Id.* at 210. The *Robertson* court held that "[t]he trial court had no power to change or [to] modify its judgment once an appeal had been taken ..." and that the consent judgment was void for its having been rendered while the Texas Supreme Court still "had exclusive plenary jurisdiction over the case" by virtue of the rehearing motion's pendency. *Id. Robertson*, however, did not involve the issue of whether a trial court had jurisdiction to render a judgment after the appellate court had issued its judgment and the appellate court's plenary power had expired.

We likewise distinguish the second opinion sometimes cited as having implicitly overruled *Street* and *Brazzel*: *In re Long*, 984 S.W.2d 623 (Tex.1999) (orig.proceeding). Like *Robertson*, *In re Long* does not mention *Street* or *Brazzel*. In *Long*, the district clerk sought mandamus relief from a judgment of contempt for his having collected fees in contravention of a trial-court injunction. *Id.* at 624. The trial court had rendered judgment enjoining the clerk from collecting certain fees, and both parties had appealed. *Id.* The appellate court modified the judgment, affirmed the judgment as modified, and overruled the parties' rehearing motions on July 11, 1994. *Id.* The clerk did not seek Texas Supreme Court review, but the other party did. *Id.* After the Texas Supreme Court had denied petition for review and rehear-

ing on the petition, the court of appeals's mandate issued on February 13, 1995. *Id.* The trial court then held the clerk in contempt for having collected the disputed fees from the date that the court of appeals had overruled the parties' rehearing motions (July 11, 1994) through the date that the clerk had actually stopped collecting the fees (April 1, 1995). *Id.* The Texas Supreme Court granted mandamus relief for the contempt penalties assessed from the period of July 11, 1994 through the date that mandate had issued in the court of appeals (February 13, 1995). *Id.* at 624–25. The court held:

> Absent an order to the contrary by the trial court or an appellate court, the Clerk could not be held in contempt for violating the injunction until all appeals relating to the judgment were exhausted and a mandate enforcing the judgment was issued. . . . [T]he clerk was not obligated to comply with the injunction until the appeals were final and mandate issued on February 13, 1995.

*Id.* at 626.

■ The *Long* opinion stands for the proposition that a court official may not be *required*, through mandamus or otherwise, to enforce an appellate court judgment until the mandate has issued. That holding comports with the function of a mandate. "A mandate is the official notice of the action of the appellate court, directed to the court below, advising it of the action of the appellate court and directing it to have its judgment duly recognized, obeyed, and executed." *Lewelling v. Bosworth*, 840 S.W.2d 640, 642 (Tex.App.-Dallas 1992, orig. proceeding); *accord In re Marriage of Grossnickle*, 115 S.W.3d 238, 243 (Tex. App.-Texarkana 2003, no writ) (quoting *Lewelling*). The mandate has also been described as "a command of the court, which the court is authorized to give and which must be obeyed." *Williams v.*

*State,* 899 S.W.2d 13, 15 (Tex.App.-San Antonio 1995, no writ); *see* BLACK'S LAW DICTIONARY at 980 (8th ed.2004) (defining "mandate" as "an order from an appellate court directing a lower court to take a specified action."). The mandate is thus the means of enforcing the appellate court's judgment. Accordingly, "[t]he writ of mandamus will issue to compel compliance with the mandate of the Court of Appeals." *Schliemann v. Garcia,* 685 S.W.2d 690, 692 (Tex.App.-San Antonio 1984, no writ). *Long* is consistent with this line of authority because the court held that a court official could not be *compelled* by the extraordinary writ of mandamus to comply with an appellate decision for which mandate had not yet issued. However, *Long* does not concern whether a trial court has subject-matter jurisdiction *voluntarily to comply* with an appellate court's judgment after the appellate court's plenary power expires and all appeals have been exhausted, but before mandate issues. Accordingly, *Long* does not overrule *Street* or *Brazzel.*

Because no motions for rehearing or motions for extension of time to file rehearing were filed in the court of appeals, and because no petition for review was filed with the Texas Supreme Court, the appellate court lost jurisdiction, and the trial court generally regained its jurisdiction, no later than July 1, 2003, 60 days after the appellate court's judgment issued. *See* TEX.R.APP. P. 19.1(a). The trial court's judgment upon remand issued after those dates, and that judgment did not actually interfere with the appellate court's active power and authority over the cause. Accordingly, the trial court had subject-matter jurisdiction to render the judgment from which appeal is taken. *See Street,* 364 S.W.2d at 187–88; *see also Brazzel,* 481 S.W.2d at 803. Because the trial court had subject-matter jurisdiction to render

its judgment, that judgment was not void. *See id.*

We overrule this challenge under Saudi's issue.

## Defamation

In the remainder of his issue, Saudi argues that the trial court erred in granting Brieven's motion for summary judgment because Brieven did not carry his summary judgment burden of proving his qualified privilege.

### A. Standard of Review and Burden of Proof

Brieven moved for traditional summary judgment. *See* TEX.R. CIV. P. 166a(c). Summary judgment under rule 166a(c) is proper only when a movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *Id.*

In our review, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in its favor, and take as true all evidence favorable to it. *Id.* When an order granting summary judgment does not specify the grounds upon which the trial court ruled, we must affirm to the extent that any of the summary judgment grounds is meritorious. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

### B. Qualified Privilege

 To maintain a defamation cause of action, the plaintiff must prove that (1) the defendant published a false statement about the plaintiff; (2) the statement was

defamatory concerning the plaintiff; and (3) the defendant acted with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). However, a qualified privilege to make a statement exists when "the person making the statement ... make[s] it in good faith on a subject matter in which the speaker has a common interest with the other person, or with reference to which the speaker has a duty to communicate to the other." *Grant v. Stop–N–Go Mkt. of Tex., Inc.*, 994 S.W.2d 867, 874 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *accord E. Tex. Med. Ctr. Cancer Inst. v. Anderson*, 991 S.W.2d 55, 60 (Tex.App.-Tyler 1998, pet. denied). The privilege does not apply if the information is furnished to others not sharing the common interest. *See Dun & Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 898–99 (Tex.1970); *Grant*, 994 S.W.2d at 874.

 The privilege is also defeated if the defendant makes the statement with actual malice. *Grant*, 994 S.W.2d at 874. "The privilege is abused if the statement is made with actual malice—that is, it is made with knowledge of its falsity or with reckless disregard as to its truth." *Grant*, 994 S.W.2d at 874. "Malice ... cannot be inferred from falsity of the statement alone." *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197, 200 (Tex.App.-Texarkana 1993, writ denied). "An uncontroverted affidavit by the person publishing the statement that indicates the statement was not made with actual malice is sufficient to meet the burden to negate actual malice as a matter of law." *Assoc. Press v. Cook*, 17 S.W.3d 447, 458 (Tex. App.-Houston [1st Dist.] 2000, no pet.).

 Brieven had the burden to prove conclusively his affirmative defense of qualified privilege, including proving the lack of malice. *See Cook*, 17 S.W.3d at 458; *Grant*, 994 S.W.2d at 874; *Martin*, 860 S.W.2d at 199.

Brieven produced his affidavit, which is quoted in the opinion of the Fourteenth Court of Appeals, in support of his defense. *See Saudi*, 2003 WL 1989112, at *3. Saudi does not complain on appeal that Brieven's affidavit testimony was conclusory, that it was incontrovertible, that it lacked foundation, or that it came from an interested witness, and he did not object to the testimony otherwise below or on appeal.

### 1. Common Interest

 We agree with the Fourteenth Court of Appeals that Brieven's affidavit carried his burden to show an "interlocking business relationship" among IBMS, American, and Industrial, so that Brieven's statements both at the June 18, 1998 meeting and in the September 1998 phone call were made only to those with a common business interest. *See id.* Additionally, Saudi's affidavit evidence that was not struck supported Brieven's testimony or at least did not raise a fact issue on common interest.

 Saudi nonetheless responds that the trial court erred in rendering summary judgment because, in doing so, the court violated the law-of-the-case doctrine. "The 'law of the case' doctrine is that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Lee v. Lee*, 44 S.W.3d 151, 153 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (quoting *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986)). A decision rendered in a prior appellate opinion in the same case does not absolutely bar reconsideration of the same issue on a second appeal if the issues and facts are not substantially the same in the subsequent proceeding. *Hudson*, 711 S.W.2d at

630. Similarly, if the appellate court's prior decision is clearly erroneous, the subsequent court is not required to adhere to the ruling. *See Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex.2003). The doctrine's application lies within the discretion of the trial court, depending on the particular circumstances of the case. *Id.*

■ Here, no one raised law of the case as a summary judgment ground or argument upon remand. Assuming without deciding that we can consider this argument despite its not having been raised below,[4] we hold that the doctrine did not preclude the trial court from rendering judgment for Brieven. The doctrine does not apply if the pertinent facts are not substantially the same in the two proceedings. *Hudson*, 711 S.W.2d at 630. The pertinent facts are not substantially the same because, on remand, the trial court struck the sole evidence on which the Fourteenth Court of Appeals had held that a fact issue existed—a single statement in Saudi's affidavit. *See Saudi*, 2003 WL 1989112, at *4–5. Without any controverting evidence upon remand, Brieven's affidavit carried his burden. The law-of-the-case doctrine thus did not apply.

Accordingly, we reject Saudi's argument that the trial court erred in rendering summary judgment because of the law-of-the-case doctrine.

### 2. Actual Malice

Saudi alternatively argues that Brieven's qualified-privilege defense fails because Brieven's defamatory statements were made with actual malice. Specifically, Saudi argues that "malice can be inferred where, as here, the false allegations are recklessly based wholly on an unverified anonymous informant."

■ Brieven's affidavit stated that he based his accusations concerning the unauthorized purchases on information from his own port engineer, Gilbert; that none of his statements was made with malice or ill will; that he raised his concerns "in good faith, based on [his] reasonable belief of the truthfulness of the information"; that he did not know any of the statements to have been false; and that he did not make any statements "with reckless disregard as to whether they were false." Given that Saudi does not complain on appeal, and did not complain below, that Brieven's affidavit was conclusory, came from an interested witness, lacked foundation, was incontrovertible, or was objectionable for any other reason on the issue of malice, this testimony sufficed to carry Brieven's burden to disprove actual malice. *See Cook*, 17 S.W.3d at 458 ("An uncontroverted affidavit by the person publishing the statement that indicates the statement was not made with actual malice is sufficient to meet the burden to negate actual malice as a matter of law.").

Additionally, Brieven did not rely "wholly on an unverified anonymous informant"; rather, the summary judgment evidence shows that he relied on information received by Gilbert, his own employee, and Brieven's affidavit does not state that Gilbert's information came from an "unverified anonymous informant."[5]

Accordingly, we hold that Brieven conclusively proved the lack of actual malice with respect to his qualified-privilege defense.

---

**4.** *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341, 343 (Tex.1993) (limiting non-movant who did not raise grounds in summary judgment response to arguing on appeal that movant did not carry summary judgment burden).

**5.** We distinguish the authority that Saudi cites for the reasons indicated in the parenthetical to each case. *See Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989) (noting that "reckless disregard for the truth"

### 3. Evidentiary Rulings

We also hold that Saudi has not properly raised challenges to the trial court's evidentiary rulings on remand. Only the following statements from Saudi's opening brief are pertinent to the trial court's evidentiary rulings: (1) "The trial court ... held that the affidavits of Saudi, Captain Violetta, and Emlyn Jones, were inadmissible hearsay. The Trial Court's reasoning is flawed."; (2) "Brieven's defamatory statements which he made on June 18, 1998 ... are admissions ...."; and (3) "All of Brieven's defamatory statements qualify as admissions and were not hearsay." His opening brief contains no authority or discussion whatsoever on the propriety of the evidentiary rulings, other than those few statements quoted. It is not until his reply brief that Saudi cites to any authority, and then he cites only to one rule: "In order to prevail on this appeal, Brieven must obtain a holding that admissions of a party opponent are hearsay. Brieven's statements to either Saudi or other ... witnesses are not hearsay.... See TEX.R. EVID. 801(e)(2)."

This is the entirety of Saudi's analysis of the matter, and it does not suffice to raise a proper challenge. In the trial court, Brieven objected to two paragraphs in one of Saudi's affidavits, to 11 paragraphs in two others, and to eight paragraphs in the fourth affidavit. Brieven objected on various grounds—hearsay, irrelevancy, lack of foundation or factual basis, mere opinion, speculation, conclusoriness, lack of person-al knowledge, and the contradictory nature of certain allegations—to various portions of all four affidavits. The trial court sustained all of Brieven's objections. Saudi offers no analysis of which specific rulings he challenges, does not explain to which portions of which affidavits his challenges relate, and offers no authority or even discussion of any basis for Brieven's objections except for his one hearsay assertion. Given the paucity of Saudi's briefing, the fact that he cited no authority until his reply brief, and the fact that he provides virtually no analysis on the portions of the struck affidavits that he challenges, we hold that he has waived any challenges to the trial court's evidentiary rulings for lack of adequate briefing. See TEX.R.APP. P. 38.1(h); *Franz v. Katy Indep. Sch. Dist.*, 35 S.W.3d 749, 755 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

Moreover, with respect to Saudi's party-opponent hearsay argument, we would overrule that challenge in any event: the few affidavit paragraphs to which that rule might be relevant were not excluded on the basis of hearsay.

We overrule the remainder of Saudi's issue.[6]

### Conclusion

We affirm the judgment of the trial court.

---

requires more than mere failure to investigate before publishing; holding that evidence supported finding of actual malice because of "purposeful avoidance of truth"); *Amant v. Thompson*, 390 U.S. 727, 732–33, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968) (finding no actual malice; noting, among other things, that failure to investigate does not by itself establish bad faith).

6. We need not reach Saudi's appellate challenge concerning whether he suffered damages from Brieven's alleged defamatory statements because Brieven did not move for summary judgment against Saudi's defamation claims on this ground. We cannot affirm a summary judgment on a ground that the movant did not urge. See *McConnell*, 858 S.W.2d at 341, 343. Accordingly, any challenges concerning damages are irrelevant to our disposition.