# Supreme Court of Texas

No. 22-0095

Freeport-McMoRan Oil & Gas LLC and Ovintiv USA Inc.,
*Petitioners*,

v.

1776 Energy Partners, LLC,
*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued February 1, 2023**

JUSTICE BOYD delivered the opinion of the Court.

An operator of oil-and-gas wells withheld production payments it was contractually obligated to make to one of the wells' owners. It did so in reliance on a statutory provision—commonly referred to as a "safe harbor" provision—that permits operators to withhold payments "without interest" under certain circumstances. The owner sued the operator to recover the payments, with interest, and the operator ultimately made the payments, but without interest. The trial court held that, as a matter of law, the safe-harbor provision applies and relieves

the operator from any obligation to pay interest on the amounts withheld. The court of appeals reversed, concluding that the trial court must resolve certain fact issues to determine whether the safe-harbor provision applies. Because we agree with the trial court that the safe-harbor provision applies as a matter of law, we reverse the court of appeals' judgment and reinstate the trial court's judgment.

## I.
## Background

Two energy-production companies, which we will refer to as Ovintiv[1] and 1776 Energy,[2] entered into a series of agreements to jointly develop and produce minerals from oil-and-gas leases they owned in Karnes County. These joint-operating agreements designated Ovintiv as the operator and required 1776 Energy to pay its proportionate share of the operating expenses in return for its share of the revenue produced from the wells.

Another company, Longview Energy Company, later sued 1776 Energy,[3] alleging that two of Longview's directors breached fiduciary duties they owed to Longview by acquiring the Karnes County investment opportunity for 1776 Energy when they should have

---

[1] The original predecessor to Ovintiv's interests in these transactions was Plains Exploration & Production Company. Plains transferred its interests to Freeport-McMoRan Oil & Gas LLC, which later assigned the interests to Encana Oil & Gas (USA) Inc., which later changed its name to Ovintiv.

[2] 1776 Energy Partners, LLC was previously called Riley-Huff Energy Group LLP.

[3] Longview's lawsuit involved additional parties, but they are not relevant to the issues in this case.

2

acquired it for Longview.[4] That suit went to trial, and the jury agreed with Longview. Based on the jury's verdict, the trial court rendered a final judgment (the Longview Judgment) that, among other things, ordered 1776 Energy to transfer its interests in the Karnes County leases to Longview and imposed a constructive trust on those interests until the transfer occurred. Specifically, the judgment:

- declared that Longview "has an equitable interest in and is granted a constructive trust (the 'Constructive Trust')[5] over all" of 1776 Energy's "right, title, and interest . . . in and to" the leases;

- ordered 1776 Energy "to do all acts and things as may be necessary to fully transfer, convey, grant, or assign to Longview the legal title to all" of those leases and interests within thirty days;

- ordered that, until 1776 Energy "fully" transfers the leases and interests to Longview, 1776 Energy "holds the properties, rights, and interests . . . only to the extent of legal title as a constructive trustee for Longview's use and benefit and that [1776 Energy] holds no equitable interest therein"; and

- ordered that 1776 Energy pay Longview "the production revenues" from the leases "and an additional $95,500,000.00."

---

[4] *See Huff Energy Fund, L.P. v. Longview Energy Co.*, 482 S.W.3d 184, 187–88 (Tex. App.—San Antonio 2015) (en banc), *aff'd*, 533 S.W.3d 866 (Tex. 2017).

[5] A constructive trust is "an equitable, court-created remedy designed to prevent unjust enrichment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015) (citing *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974)). "The theory underlying the constructive-trust remedy is the equitable notion that the 'acquisition or retention of the property is wrongful and that the possessor of the property would be unjustly enriched if the possessor were permitted to retain the property.'" *Id.* (quoting *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied)).

3

1776 Energy appealed and posted $25 million in cash in lieu of a supersedeas bond to suspend enforcement of the judgment.[6]

When Ovintiv learned of the Longview Judgment, it began withholding the production payments it owed to 1776 Energy under their joint-operating agreements. Ovintiv advised 1776 Energy and others that it would deliver the payments to their rightful owner once Longview's suit against 1776 Energy was resolved. Every month thereafter, Ovintiv sent 1776 Energy an updated account of the funds it was withholding, including an offset for 1776 Energy's proportionate share of the ongoing development and operating costs. 1776 Energy then filed this suit against Ovintiv, alleging that it breached the parties' joint-operating agreements by withholding production payments and demanding delivery of the payments with interest and attorney's fees.

While this suit was pending, the court of appeals reversed the Longview Judgment, holding that Longview's pleadings and evidence did not support it. *Huff Energy Fund*, 482 S.W.3d at 235. We granted Longview's petition for review, and ultimately affirmed the court of appeals' judgment. *Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 869 (Tex. 2017). We then denied Longview's motion for

---

[6] A supersedeas bond is used "to stay execution on a judgment during the pendency of the appeal." *Bond*, BLACK'S LAW DICTIONARY (11th ed. 2019) (citing FED. R. CIV. P. 62(d); FED. R. APP. P. 8(b)); *see also* TEX. R. APP. P. 24.1(f) ("Enforcement of a judgment must be suspended if the judgment is superseded."). The bond is meant to "preserve[] the status quo of the matters in litigation as they existed before the issuance of the order or judgment from which an appeal is taken." *In re Fuentes*, 530 S.W.3d 244, 250 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (quoting *Alpert v. Riley*, 274 S.W.3d 277, 297–98 (Tex. App.—Houston [1st Dist.] 2008, pet. denied)).

4

rehearing and issued our mandate. Ovintiv paid the withheld funds to 1776 Energy shortly thereafter.

1776 Energy accepted the previously withheld payments but continued to pursue this suit to collect the interest that accrued during the time Ovintiv withheld the funds. Ovintiv filed a series of summary-judgment motions, arguing that a statutory safe-harbor provision allowed it to withhold the funds without interest until the Longview lawsuit was resolved. After denying Ovintiv's first two motions, the trial court granted the third. The trial court then rendered a final judgment, which incorporated the summary judgment and dismissed 1776 Energy's claims.[7] 1776 Energy appealed, and the court of appeals reversed and remanded the case to the trial court, holding that the court needed to resolve certain fact issues to decide whether the statutory safe-harbor provision applied. ___ S.W.3d ___, 2021 WL 6127930, at *4 (Tex. App.—San Antonio Dec. 29, 2021). We granted Ovintiv's petition for review.

## II.
## Safe-Harbor Provision

The Texas Natural Resources Code requires a "payor" to distribute oil-and-gas-production proceeds to each "payee" within

---

[7] The final judgment also incorporated a pretrial ruling in which the trial court found that Ovintiv was the prevailing party as a matter of law and thus entitled to its attorney's fees under the parties' joint-operating agreements. The judgment awarded Ovintiv reasonable and necessary attorney's fees, as found by a jury.

5

certain deadlines after the oil or gas is sold.[8] TEX. NAT. RES. CODE § 91.402(a). If the payor fails to timely pay the proceeds, the payee is entitled to recover interest on the late payments, along with its attorney's fees. *Id.* §§ 91.403, .406. Section 91.402(b), however, permits payors to withhold payments "without interest beyond the time limits" under certain circumstances. *See id.* § 91.402(b). Ovintiv contends that two of those circumstances existed during the time it withheld payments from 1776 Energy.

The first provision on which Ovintiv relies permits a payor to withhold payments if "there is . . . a dispute concerning title that would affect distribution of payments." *Id.* § 91.402(b)(1)(A). The second permits withholding if "there is . . . a reasonable doubt that the payee . . . has clear title to the interest in the proceeds of production." *Id.* § 91.402(b)(1)(B)(ii). Ovintiv contends it conclusively established that both provisions apply as a matter of law. We agree.

A. **Dispute Concerning Title**

The first safe-harbor provision requires Ovintiv to establish two facts: (1) that a "dispute concerning title" existed during the time it withheld production payments and (2) that dispute "would affect distribution of payments." *See id.* § 91.402(b)(1)(A). 1776 Energy does not dispute in this Court that a "dispute concerning title" existed for most of the time Ovintiv withheld payments, but it contends Ovintiv did

---

[8] A "payor" is defined as "the party who undertakes to distribute oil and gas proceeds" to the payee. TEX. NAT. RES. CODE § 91.401(2). A "payee" is "any person or persons legally entitled to payment from the proceeds derived from the sale of oil or gas from an oil or gas well located in this state." *Id.* § 91.401(1).

not conclusively establish that the dispute "would affect distribution of payments."

Specifically, 1776 Energy argues that, because Ovintiv began withholding payments in response to the Longview Judgment,[9] the terms of that judgment establish the facts that govern whether the dispute between 1776 Energy and Longview "would affect the distribution of production payments." And, according to 1776 Energy, the Longview Judgment did not affect the distribution of production payments because at all times from and after the date of that judgment, 1776 Energy retained legal and equitable title to the leases and interests giving rise to the payments. More specifically, 1776 Energy reasons as follows:

1. Under the Longview Judgment, 1776 Energy retained legal title to the interests as the trustee for the benefit of Longview under a constructive trust, at least until it fully transferred legal title to Longview;

2. 1776 Energy never transferred legal title to Longview because it quickly appealed the Longview Judgment;

3. The Longview Judgment never transferred equitable title to Longview because 1776 Energy quickly tendered $25 million in lieu of a supersedeas bond, thereby preserving the prejudgment status quo pending final resolution of the appeal;

4. The court of appeals reversed the Longview Judgment and this Court affirmed, thus confirming 1776 Energy was the legal title holder throughout the time Ovintiv withheld the payments; and

---

[9] Although a dispute between 1776 Energy and Longview existed at least as early as the date on which Longview first filed suit against 1776 Energy, Ovintiv did not begin withholding payments until after the trial court rendered the Longview Judgment.

7

5. As long as it was the legal title holder, 1776 Energy was entitled to receive the payments, even if it was required to hold them in trust for Longview.

The court of appeals essentially agreed with 1776 Energy, concluding that 1776 Energy was always entitled to receive the production payments "either: (1) as owner of legal and equitable title; or (2) as trustee, under the Longview Judgment, for the benefit of Longview Energy until 1776 Energy could transfer legal title to Longview Energy." ___ S.W.3d at ___, 2021 WL 6127930, at *3.

Even assuming 1776 Energy and the court of appeals correctly construe the Longview Judgment, they misconstrue section 91.402(b)(1)(A). That provision requires that the dispute existing between 1776 Energy and Longview when Ovintiv withheld the payments "would affect" distribution of the production payments. Under its common, ordinary usage,[10] the term "would" can carry a variety of meanings depending on its context. Section 91.402(b)(1)(A) uses "would" in its auxiliary form[11] to express "a contingency or possibility" or a

---

[10] Because the Natural Resources Code does not define the terms "would" or "affect," we must apply their common, ordinary meaning unless a contrary meaning is apparent from the statute's language. *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017) (citing *Univ. of Tex. at Arlington v. Williams*, 459 S.W.3d 48, 52 (Tex. 2015)). We typically do this by looking first to dictionaries. *Id.* at 35 (citing *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011)).

[11] A verb used in its auxiliary form is commonly referred to as a modal auxiliary. *See Modal Auxiliary*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1984). It is a verb such as "*can, must, might, [or] may*" that is characteristically used with a verb of predication. *Id.* While a regular verb is usually the "grammatical center of a predicate and expresses an act, occurrence, or mode of being . . . [and] typically has [a] rather full descriptive

8

"probability or presumption in past or present." *Would*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1984). And the term "affect" means "to produce an effect upon," "to produce a material influence upon or alteration in," or "to act upon . . . so as to effect a response." *Affect*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1984). The inclusion of "would" as an auxiliary verb with "affect" as a predicate verb alters the sentence's meaning so that, instead of requiring a "current effect," the provision requires only an expected future effect. In other words, because the sentence includes "would," it does not require that the dispute currently alter or influence distributions at the time the payor withholds the distributions. Section 91.402(b)(1)(A) thus permitted Ovintiv to withhold the payments without interest if the dispute concerning title was, at that time, at least expected or likely to influence or alter the distribution of the payments Ovintiv owed to 1776 Energy under the joint-operating agreements. In our view, as a matter of law, it "would."

If, for example, the Longview lawsuit ultimately resulted in a decision that *Longview* was entitled to receive the production payments, that judgment would have required that the payments—those Ovintiv withheld as well as those that would come due in the future—be distributed to Longview. Because the lawsuit ultimately resulted in a decision that *1776 Energy* was entitled to receive the payments, it required the payments—those Ovintiv withheld as well as those that

---

meaning and characterizing quality," an auxiliary verb tends to be "devoid" of that meaning. *See Verb*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1984).

would become due in the future—to be distributed to 1776 Energy. Either way, the dispute that existed when Ovintiv withheld the payments "would affect the distribution of payments," either by ordering that they be made to Longview or by ordering that they be made to 1776 Energy.

By contrast, 1776 Energy and the court of appeals construe the section to permit withholding only if the dispute "currently alters the distribution of the payments" or "requires the payor to distribute the payments to a different payee." But section 91.402(b)(1)(A) does not permit withholding without interest if, at the time the payor withholds the payments (the present), "there is" a dispute "that affects" or "that currently affects" (in the present) the distribution. Instead, it permits withholding without interest if at that time (the present) "there is" a dispute "that would affect" distribution, thus referring to a future time from a past point of view.[12] Any other interpretation ignores the role "would" plays in the statutory text and how it modifies the word "affect." The fact that 1776 Energy always retained legal—and even equitable—title does not alter the fact that the dispute existed or that the dispute "would affect distribution of the payments." Section 91.402(b)(1)(A) thus permitted Ovintiv to withhold production payments "without interest."

Alternatively, 1776 Energy argues that its dispute with Longview "was cleared" and "terminated" when the court of appeals reversed the Longview Judgment and rendered judgment for 1776 Energy, or at least

---

[12] *Would*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org /dictionary/english/would (last visited May 9, 2023) (defining "would" as "used to refer to future time from the point of view of the past").

when we issued our opinion affirming the court of appeals' judgment. But a court of appeals' decision is not final until it issues a mandate,[13] *see Clark v. ConocoPhillips Co.*, 465 S.W.3d 720, 726 (Tex. App.—Houston [14th Dist.] 2015, no pet.), which it never did here because Longview filed a petition for review in this Court. *See* TEX. R. APP. P. 18.1(a) (stating that courts of appeals issue mandates only if no petition for review was filed or if the petition was denied or dismissed and the time to file a motion for rehearing of that decision has passed). And our decisions become final when we issue a mandate, which we can do "[t]en days after the time has expired for filing a motion to extend time to file a motion for rehearing if no timely filed motion for rehearing or motion to extend time is pending." TEX. R. APP. P. 18.1(b). Until then, the dispute still existed because Longview could file a motion for rehearing and convince us to change our opinion and judgment. In short, the dispute between 1776 Energy and Longview existed at least until the day we issued our mandate after affirming the court of appeals' judgment.[14]

---

[13] A mandate is the means of enforcing an appellate court's judgment. *See Saudi v. Brieven*, 176 S.W.3d 108, 116–17 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). It acts as "the official notice of the action of the appellate court, directed to the court below, advising it of the action of the appellate court and directing it to have its judgment duly recognized, obeyed and executed." *Id.* (quoting *Lewelling v. Bosworth*, 840 S.W.2d 640, 642 (Tex. App.—Dallas 1992, orig. proceeding)).

[14] 1776 Energy notes in its brief that Ovintiv did not distribute the withheld payments until nine days after this Court issued its mandate in the Longview litigation, but it has not argued or prayed for relief related to that nine-day period in this Court or, as far as we can tell, in the courts below.

11

## B.      Reasonable Doubt Regarding Clear Title

The second safe-harbor provision applies if Ovintiv had a "reasonable doubt" that 1776 Energy had "clear title to the interest in the proceeds of production." *See* TEX. NAT. RES. CODE § 91.402(b)(1)(B)(ii). The parties primarily disagree about the import of the phrase "reasonable doubt." According to 1776 Energy, issues of reasonableness must be resolved by a factfinder as a question of fact rather than by a court as a matter of law. The court of appeals agreed, explaining that the determination as to "whether something is reasonable is often an issue of fact that should be adjudicated by the factfinder because it requires comparison to surrounding circumstances." ___ S.W.3d at ___, 2021 WL 6127930, at *4. Based on evidence it identified as casting doubt on the reasonableness of Ovintiv's belief that 1776 Energy did not have "clear title" to the production proceeds, the court of appeals reversed the trial court's judgment. *Id.* We disagree.

Reasonableness has always entailed an *objective* inquiry. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 596 (Tex. 2016) ("[U]nreasonableness must be determined based on an objective standard of persons of ordinary sensibilities."); *see also* RESTATEMENT (SECOND) OF TORTS § 283 cmt. c (AM. LAW INST. 1965) (describing the "reasonable man" standard as "an objective and external one"). While questions of reasonableness must be submitted to a factfinder when a genuine disagreement *about the facts* prevents the law from generating an objective answer, *see Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978) (citing *Najera v. Great Atl. & Pac. Tea Co.*, 207 S.W.2d 365, 367

12

(Tex. 1948)), no case citing that proposition can be understood to say that a factfinder must resolve *all* issues touching on reasonableness. Rather, the legal *standard* for reasonableness remains objective even if the "controlling facts" are in doubt.[15] Thus, reasonableness may present a question of law "when from the facts in evidence but one rational inference can be drawn." *Lang v. Henderson*, 215 S.W.2d 585, 357 (Tex. 1948); *see also Reliance Nat'l Indem. Co. v. Advance'd Temps., Inc.*, 227 S.W.3d 46, 60 (Tex. 2007); *EXLP Leasing v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 581 (Tex. 2018).

As a result, when the material facts are undisputed and lead to but one rational conclusion, courts may resolve section 91.402(b)(1)(B)(ii)'s "reasonable doubt" prong as a matter of law. Applying that prong here, we hold as a matter of law that Ovintiv had a "reasonable doubt" that 1776 Energy had "clear title to the interest in the proceeds of production." *See* TEX. NAT. RES. CODE § 91.402(b)(1)(B)(ii). The reason is straightforward: Longview's claims and pending lawsuit, which sought (and eventually obtained) a judgment imposing a constructive trust over 1776 Energy's interests, clouded 1776 Energy's title to the production proceeds.

1776 Energy contends that the "constructive trust" established *its* title to the production proceeds, but the opposite is true. A court may impose a constructive trust only if the court concludes the owner possesses the property wrongfully or unlawfully. *See KCM Fin.*, 457

---

[15] When the controlling facts are disputed, the court properly instructs the jury about the objective legal standard and the jury then determines, based on what it finds to be the true facts, whether the party acted in conformance with that standard. If so, the party acted reasonably; if not, it did not.

S.W.3d at 87; *Meadow*, 516 S.W.2d at 131 ("Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice."). By imposing a constructive trust, a court concludes the party *should not* be holding the property at all, which makes the party's title anything but "clear."

In any event, the very existence of the underlying dispute, so long as it was not frivolous, would cloud the title, even though we ultimately reversed the court of appeals' judgment.[16] For these reasons, 1776 Energy objectively could not have had "clear title" under section 91.402(b)(1)(B)(ii) and Ovintiv, in turn, objectively held at least a "reasonable doubt" regarding clear title.

1776 Energy's various objections cannot overcome this legal conclusion. 1776 Energy highlights, for example, the deposition testimony of Ovintiv's corporate representative, who said she was aware that 1776 Energy was holding the disputed assets for the benefit of Longview (by virtue of the constructive trust) and that Ovintiv continued billing 1776 Energy for its share of the development and operating costs. And according to an affidavit by 1776 Energy's president, "out of all the parties that 1776 Energy was in business with

---

[16] On appeal in the Longview suit, 1776 Energy conceded that its "title to the assets encompassed within the constructive trust remains clouded, and the judgment materially impacts the day-to-day operations." 1776 Energy was correct, as our cases recognize that a claim against a party's title to property can create a cloud on that title. *See Lance v. Robinson*, 543 S.W.3d 723, 738 (Tex. 2018); *Brumley v. McDuff*, 616 S.W.3d 826, 835 (Tex. 2021); *see also Cloud on Title*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A defect or potential defect in the owner's title to a piece of land arising from a claim or encumbrance, such as a lien, an easement, or a court order.").

before, after, and during the" Longview suit, Ovintiv was the only one that suspended payment. Based on this evidence, 1776 Energy argues Ovintiv's doubt about clear title could not have been reasonable or—at the very least—whether it was reasonable presents a fact issue.

Assuming this evidence is true and viewing it in the light most favorable to 1776 Energy, a reasonable doubt existed as a matter of law. A corporate representative's acknowledgement of how a constructive trust works only confirms that *1776 Energy itself* lacked clear title. Likewise, Ovintiv's continued billing of 1776 Energy is not inconsistent with the belief that 1776 Energy lacked clear title to the proceeds; bills can be sent to an entity with clouded title. If anything, the constructive trust justified sending those bills.

### III.
### Conclusion

For these reasons, we hold that Ovintiv established as a matter of law that it was entitled to withhold distribution of production payments without interest under the statutory safe-harbor provisions in section 91.402(b)(1)(A) and (b)(1)(B)(ii) of the Texas Natural Resources Code. We therefore reverse the court of appeals' judgment and reinstate the trial court's final judgment for Petitioners.

Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** May 19, 2023

15