**Affirmed and Memorandum Opinion filed April 10, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00502-CV

---

### JAMES O. AINSWORTH, JR., Appellant

### V.

### CACH, LLC, Appellee

---

**On Appeal from the County Court at Law No. 1
Fort Bend County, Texas
Trial Court Cause No. 09-CCV-040548**

---

## M E M O R A N D U M   O P I N I O N

In this credit card collection case, appellant James O. Ainsworth, Jr. challenges a judgment in favor of appellee CACH, LLC. Ainsworth contends that (a) the trial court erroneously admitted a business-records affidavit, (b) CACH lacked standing to sue, (c) the trial court abused its discretion by permitting Ainsworth to testify regarding documents not in evidence, (d) attorney's fees were not proven by CACH, (e) the evidence is legally insufficient to support the verdict, and (f) the trial court erred by denying Ainsworth's counterclaims. We affirm.

## BACKGROUND

In October 2009, CACH sued Ainsworth to recover a credit card debt attributed to Ainsworth. CACH had acquired the debt from Chase Bank USA, N.A. In September 2010, Ainsworth answered with a sworn denial, stating that CACH's claims were not true, that he did not owe the amount CACH claimed he owed, and that he had never applied for, received, used, or authorized anyone to use the credit card at issue. He also asserted the affirmative defenses of statute of limitations, fraud, statute of frauds, payment, estoppel, failure of consideration, and usury. He further challenged CACH's standing to sue and averred that he had not received a pre-suit demand. Finally, he counterclaimed under the DTPA, the Fair Debt Collection Practices Act, and the Texas Finance Code.

During discovery, CACH sought copies of Ainsworth's personal Wells Fargo bank account statements for the period from April 1, 2007 through April 30, 2008 (the "Wells Fargo statements"). After being sanctioned for failing to produce these documents, Ainsworth produced them to CACH.

At the bench trial conducted on March 22, 2011, Ainsworth challenged CACH's standing to pursue collection of this account. In response, CACH asserted that it had standing as an assignee of the original holder of the account. The trial court admitted, over a variety of Ainsworth's objections, a business-records affidavit signed by CACH employee Maria Hwang on November 9, 2010, with several attachments incorporated therein (the "business-records affidavit"). In this affidavit, Hwang states:

1. I am the Authorized Agent and custodian of the records of Plaintiff and am familiar with the Plaintiff's business processes. Business records are kept and maintained in the ordinary course of Plaintiff's business ("Records") concerning accounts like the account of the Defendant. The Records are made and maintained by individuals who have a business duty to make entries in the Records accurately at or near the time of the event that they record, or reasonably soon thereafter, by or from information transmitted by someone with personal knowledge of the event or act.

2

2. In addition, it is Plaintiff's regular business practice to obtain, integrate, and rely upon documents prepared by the original creditor of the account at issue. In this particular action, Plaintiff has obtained and integrated documents received from the original creditor, CHASE BANK USA, N.A. successor in interest to WASH1NGTON MUTUAL/PROVIDIAN BANK. Plaintiff relies upon the accuracy of such documentation in its day to day business activities and such documents are considered Records of the Plaintiff. The records consist of both hard copy information and electronic information that is generated, stored and maintained by the original creditor in accordance with generally accepted standards in the retail and financial industries by individuals that possess the knowledge and training necessary to ensure the accuracy and reliability of the records. I know from my experience in reviewing such records that those records are made and maintained by individuals who have a business duty to make entries in the records accurately at or near the time of the event that they record. Plaintiff relies upon the accuracy and reliability of said records in its day to day business.

Exhibit A to this affidavit is a "Bill of Sale" from Chase to CACH, purporting to sell "all rights, title and interest" to certain receivables "described in Exhibit 1 attached hereto and made part hereof for all purposes." In turn, attached to this Bill of Sale is a largely redacted spreadsheet, with a heading stating "Chase Bank USA to CACH, LLC." The spreadsheet contains the following information:

| Account Number | Debtor Name | SSN | Client Acct No | DOB | Original Creditor | Placement Date | Placement | Creditor Last Pay | C/O Date |
|---|---|---|---|---|---|---|---|---|---|
| 15185179971295969 | AINSWORTH, JR, JAMES O | XXX-XX-9743 | 4559962400404685 | 2/3/1952 | WAMU/PROVIDIAN BANK | 12/18/2008 | 4567.07 | 4/3/2008 | 11/28/2008 |

Another affidavit by Hwang, dated August 6, 2009, is attached to the business-records affidavit. In this affidavit, Hwang states:

1. I am an authorized agent for and a custodian of the records of CACH, LLC.

2. As authorized agent and custodian of the business records for Plaintiff, I have personal knowledge based upon the review of the documentation provided by the original creditor (attached hereto) that, after all just and lawful offsets, payments, and credits have been

3

allowed, the total balance on the account of $4,567.07 is just and true and is due and owing from Defendant to Plaintiff.

3. The total amount of $4,567.07 is based on the amount due at the time of placement of the account with plaintiff of $4,567.07 and post placement interest of $0 which accrues at an interest rate of 0% based on the documentation provided by the original creditor and attached hereto.

4. The records attached hereto are the original or exact duplicates of the original.

5. Demand for payment of the just amount owing Plaintiff by Defendant was made upon the Defendant more than thirty (30) days prior to filing of plaintiff's original petition, and payment for the just amount owing has not been tendered.

Also attached to the business-records affidavit is an "Affidavit of Sale" signed by Wendy Baldwin of Chase, in which she states:

I am authorized on behalf of Chase Bank USA, N .A. ("Chase") to make this affidavit.

JP Morgan Chase & Co. ("JP Morgan") purchased certain credit card receivables originated by Washington Mutual Bank through the FDIC, which receivables were assigned to Chase.

JAMES O AINSWORTH JR had credit card account number 4559962400404685 with Washington Mutual Bank, and that Account was one of the receivables transferred to Chase as described in paragraph 2.

Chase sold the Account to CACH, LLC. on or about 12/22/2008. At the time of the sale to CACH, LLC., the amount due on the account pursuant to the terms of the applicable cardholder agreement by JAMES O AINSWORTH JR was $4,567.07.

Your deponent states that to the best of deponent's knowledge, information and belief that there was no unaccredited payment, just counterclaims or offsets against the account when it was sold.

Chase has no further interest in said account for any purpose.

Several copies of statements from Washington Mutual Card Services reflecting Providian account number 4559-9624-0040-4685 and addressed to James O. Ainsworth Jr., 1613 Frost St., Rosenberg, TX 77471-4214 are also attached to the business-records affidavit. The first of these statements has a closing date of February 13, 2008 and reflects a

4

balance due of $3,487.01 and a payment received of $150.00. The second statement lists the closing date as April 15, 2008, reflects various charges made and a payment of $150.00, and shows a closing balance of $3,607.08. The third statement shows the closing date as November 13, 2008 and reflects a closing balance of $4,567.07. Finally, copies of Providian Bank Visa and MasterCard account agreements are attached to the business-records affidavit, although these copies are nearly illegible and unsigned by Ainsworth.

After the business-records affidavit was admitted, CACH called Ainsworth, who testified that he had never received, used or authorized the use of, or made payments on a Washington Mutual/Providian Bank credit card. He acknowledged that the credit card statements admitted as part of the business-records affidavit were addressed to him at his residence. He agreed that the Wells Fargo statements shown to him by CACH's counsel were the statements he had produced to CACH during discovery. He further acknowledged that the Wells Fargo bank statement dated March 6 through April 4, 2007 reflected his name, his late wife's name, and his mailing address, and that he had seen these statements prior to trial.

When CACH asked him to acknowledge that on March 6, 2007, "a payment to WaMu PVN., WaMu Providian, payment on credit card" for $150.00 was shown on the Wells Fargo statement, Ainsworth's counsel objected that CACH was questioning Ainsworth about documents not in evidence. The trial court overruled the objection. Ainsworth then denied that he had made the payment reflected on his bank statement. He did, however, agree that a payment attributed to his late wife, Gayle L. Ainsworth, was made on the same day, which was reflected on the statement. He further acknowledged that a direct deposit from his employer appeared on the statement.

CACH asked about another of Ainsworth's bank statements, seeking acknowledgment from Ainsworth that he had made a payment on April 3, 2007, to WaMu Providian. Ainsworth's counsel objected that CACH was asking Ainsworth again to testify from a document not in evidence. The trial court overruled the objection, stating

5

that the document was provided to CACH's counsel. Ainsworth's counsel obtained a running objection to "this document." Ainsworth again denied making the payment shown on his bank statement, although he agreed that the statement reflected a payment to WaMu Providian for $125.00 made on April 3, 2007 with his name on it. He also denied having seen or reviewed any of his bank statements from April 2007 to April 2008. He further stated that he "had no idea" that, for seven years, statements were being sent to his house showing a debt on the credit card. He further denied having received several collection calls from various individuals regarding this credit card debt.

On cross-examination, Ainsworth testified that his late wife, Gayle, was responsible for paying the bills. He again denied ever applying for, receiving, or using the credit card at issue here. He further denied speaking with anyone from CACH regarding the credit card account. He testified that he knew nothing about this credit card debt until he received a letter from CACH's counsel that he needed to appear for court regarding the debt. He stated, "Well, it was really upsetting to me because I didn't know anything about it. Here I am being sued for a credit card I never used or knew about."

CACH's counsel, Richard Clark, testified, over Ainsworth's objection, regarding his fees. He stated that he billed his debt-collection clients, including CACH, on a twenty-five percent contingency basis of the amount collected. Clark explained that his twenty-five percent contingency fee on the principal amount owed is reasonable and necessary given the amount of work he puts into a case. When cross-examined about his time, Clark admitted that he did not keep time records because he worked on a contingency basis. He further acknowledged that he did not segregate his time between CACH's claims and the defenses and counterclaims of Ainsworth. He stated that his fee in this case was $1,507.13.[1] Ainsworth's counsel, Betsy Grubbs, testified regarding her hourly rates and that a reasonable and necessary fee for this case would be $5,120.00. She also testified regarding appellate fees. The trial court took the matter under advisement.

---

[1] This amount is greater than twenty-five percent of the principal amount owed in this debt case.

On May 4, 2011, the trial court signed a judgment in favor of CACH, awarding CACH $4,567.07 in damages, $1,150.00 in attorney's fees, five-percent post-judgment interest, and court costs. It dismissed all of Ainsworth's counterclaims with prejudice. Ainsworth filed a request for findings of fact and conclusions of law, but our record does not contain these findings. This appeal timely ensued.

## The Business-Records Affidavit

Because Ainsworth's first, second, and fifth issues relate to the trial court's admission of the business-records affidavit, we address these issues together. In issue one, Ainsworth contends that the trial court abused its discretion by admitting the business-records affidavit. Next, Ainsworth asserts that the trial court erred in concluding that CACH had standing to pursue this claim. Finally, in issue five, Ainsworth contends that, excluding the inadmissible evidence, there is no evidence to support the judgment. Ordinarily, we would address the standing issue first, as it relates to the trial court's jurisdiction.[2] But these issues all turn on the admissibility of the business-records affidavit because it establishes CACH's standing and provides legally sufficient evidence to support the trial court's verdict. Thus, we address the admissibility of this affidavit first.

### A.    Admissibility of the Business-Records Affidavit

Ainsworth challenged the admission of the business-records affidavit and supporting documentation on numerous grounds, including hearsay and that the supporting documents were unreliable and not trustworthy. The admission and exclusion of evidence are within the sound discretion of the trial court. *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 609 (Tex. App.—Houston [14th Dist.] 2006, pet.

---

[2] A party seeking affirmative relief must have standing to invoke a court's subject matter jurisdiction. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). Without breach of a legal right belonging to the plaintiff, no cause of action can accrue to its benefit. *See Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976). When a plaintiff lacks standing, the proper disposition is to dismiss the lawsuit. *Inman*, 252 S.W.3d at 304.

denied) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). The complaining party must show that the trial court erred and that such error probably resulted in an improper judgment, which usually requires a showing that the judgment turned on the challenged evidence. *Id.*; *see also* Tex. R. App. P. 44.1(a)(1) (requiring that before a judgment can be reversed on appeal it must be determined that the error probably caused rendition of an improper judgment or prevented the appellant from properly presenting the case on appeal).

A proponent of hearsay evidence bears the burden of showing that testimony fits within an exception to the general rule prohibiting admission of the hearsay evidence. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 n. 5 (Tex. 2004); *see also* Tex. R. Evid. 802. Rule of Evidence 803(6) provides an exception to the hearsay rule for business records if the offering party shows (1) the records were made and kept in the regular course of business; (2) the business kept the records as part of its regular practice; (3) the records were made at or near the time of the event they contain; and (4) the person making the records or submitting the information had personal knowledge of the events being recorded. *See* Tex. R. Evid. 803(6). Business records may also be "admissible in evidence in any court in this state upon the affidavit of [a] person" who can satisfy the requirements of Rule 803(6). Tex. R. Evid. 902(10)(a). Finally, third-party documents can become the business records of an organization and, consequently, admissible under rule 803(6), if the records are (1) incorporated and kept in the course of the testifying witness's business; (2) the business typically relies upon the accuracy of the contents of the documents; and (3) the circumstances otherwise indicate the trustworthiness of the documents. *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240–41 (Tex. App.— Houston [1st Dist.] 2010, no pet.) (citing *Bell v. State*, 176 S.W.3d 90, 92 (Tex. App.— Houston [1st Dist.] 2004, pet. ref'd)).

The business-records affidavit, described above, meets these criteria. Hwang stated that she is the custodian of records for CACH and that it is CACH's "regular business practice to obtain, integrate and rely upon documents prepared by the original

creditor of the account at issue." She further averred that CACH relies on the accuracy of the documents in its day-to-day business activities and that the records are made and maintained by individuals who have a duty to keep the record accurately at or near the time of the event that they record. Finally, one of the documents attached to the business-records affidavit is the "affidavit of sale," which is notarized. Such a notarized document is self-authenticating under the Texas Rules of Evidence. *See* Tex. R. Evid. 902(8). In this document, described above, an authorized agent of Chase Bank, N.A., stated that Chase had acquired Ainsworth's account from Washington Mutual Bank, sold it to CACH in December 2008, and that the amount due on the account at the time of the sale was $4,567.07. Chase's failure to keep accurate records could result in criminal or civil penalties. *See* Tex. Fin. Code Ann. § 392.304(a)(8) (prohibiting misrepresentations of amount of consumer debt); *id.* § 392.402 (providing for criminal penalties for violations of chapter 392 of Texas Finance Code); *see also* Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692e(2)(a) (prohibiting misrepresentation of amount of debt); *id.* § 1692*l* (providing for administrative enforcement of Administrative Debt Collection Practices Act). These circumstances otherwise indicate the trustworthiness of the Chase Bank documents.[3] *See Simien*, 321 S.W.3d at 243–44. Accordingly, because the business-records affidavit at issue here meets the criteria for admission as business records under

---

[3] Ainsworth mistakenly relies on *Old Republic*, a case from the First Court of Appeals, for the proposition that documents under the business records exception to the hearsay rule generally come in fully proven, unless contract execution is challenged by verified denial. *Old Republic Ins. Co. v. Edwards*, No. 01-10-00150-CV, 2011 WL 2623994, at *11 (Tex. App.—Houston [1st Dist.] June 30, 2011, no pet) (mem. op.). But *Old Republic* is not a case dealing with a credit card debt. *See id.* A credit or charge card agreement need not be in writing or signed. *See* Tex. Bus. & Comm. Code Ann. §26.02(a)(2)(A) (exempting credit or charge cards from the requirement that a loan agreement must be in writing; *see also Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (concluding that use of and payment on a credit card account is sufficient to establish the card holder's intent to be bound by the credit card agreement). Although Ainsworth denied applying for, receiving, using, and making payments on the account at issue here, his credibility was an issue for the trier of fact. *See, e.g., Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 422 (Tex. 1993) (stating that trial court is arbiter of both factual and legal issues in a non-jury trial); *Cent. Forest S/C Partners, Ltd. v. Mundo-Mundo, Inc.*, 184 S.W.3d 296, 302 (Tex. App.—Dallas 2005, no pet.) ("In a bench trial, it is the duty of the trial court to pass on the credibility of the witnesses and on the weight to be given their testimony.").

Texas Rule of Evidence 803(6), the trial court did not abuse its discretion in admitting these records. *See id.* We overrule Ainsworth's first issue.

**B.    Standing**

Here, CACH asserts standing as an assignee of the debt-holder. An assignee stands in the assignor's shoes and may assert those rights that the assignor could assert, including bringing suit. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000); *see also Sw. Bell Tel. Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909, 916 (Tex. 2010) (holding that because class action representative held contractually valid assignments, representative stepped "into the shoes of the claim-holders and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims"). As evidence of its status as an assignee, CACH provided the business-records affidavit described above. These documents establish that CACH has standing to sue because Chase assigned its ownership interest in Ainsworth's debt to CACH. Further, Ainsworth has not challenged Chase's right to sue for recovery of this debt. As the assignee of Chase, CACH was entitled to assert any rights Chase could assert, including bringing suit. Thus, Ainsworth's second issue is without merit, and we overrule it.

**C.    Sufficiency of the Evidence**

In conducting a legal-sufficiency review, we must consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could consider it, and disregard evidence contrary to the finding unless a reasonable fact-finder could not disregard it. *Id.* at 821.

The business-records affidavit, described above, provides legally sufficient evidence to support the trial court's verdict. It establishes that Ainsworth incurred a credit card debt, that he failed to pay it, and that this debt was ultimately acquired by CACH. Although Ainsworth denied applying for, receiving, using, and making payments on the account at issue here, his credibility was an issue for the trier of fact. *See, e.g.*, *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 422 (Tex. 1993) (stating that trial court is arbiter of both factual and legal issues in a non-jury trial); *Cent. Forest S/C Partners, Ltd. v. Mundo-Mundo, Inc.*, 184 S.W.3d 296, 302 (Tex. App.—Dallas 2005, no pet.) ("In a bench trial, it is the duty of the trial court to pass on the credibility of the witnesses and on the weight to be given their testimony."). Because the record contains legally sufficient evidence to support the trial court's verdict, we overrule Ainsworth's fifth issue.

**Ainsworth's Testimony Regarding Bank Records**

In his third issue, Ainsworth asserts that the trial court should have sustained his objection to his testimony regarding documents—the Wells Fargo statements—that were neither offered nor admitted into evidence. As described above, these documents consisted of copies of Ainsworth's banking records that he produced to CACH during discovery. To reiterate, we review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Bayer Corp.*, 214 S.W.3d at 609.

Ainsworth testified, without objection, that the Wells Fargo statements shown to him by CACH's counsel were his bank statements. He further acknowledged that these statements reflected his name, his late wife's name, and his mailing address, and that he had seen these statements prior to trial. In fact, Ainsworth answered nine questions about these documents before his counsel objected that he was "testifying to documents not in evidence." Thus, Ainsworth's objection was not timely. *See* Tex R. Evid. 103 (requiring a timely objection to admission of evidence); Tex. R. App. P. 33.1(a) (same).

Further, CACH responded that the records were offered to refresh Ainsworth's recollection and impeach his credibility because he denied knowing about the debt at

11

issue. *See* Tex. R. Evid. 612 (providing that a witness may use a writing to refresh his memory, but that if so used, the adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce portions of the writing into evidence relating to the witness's testimony). Neither CACH nor Ainsworth attempted to have these records admitted. The credibility of a witness may be attacked by any party, including the party calling the witness. Tex. R. Evid. 607. Under these circumstances, we cannot say that the trial court abused its discretion in admitting Ainsworth's testimony regarding these documents. We overrule appellant's third issue.

### CACH's Attorney's Fees

In issue four, Ainsworth contends the trial court erred by allowing the testimony of CACH's attorney, Richard Clark, regarding his fees. Specifically, Ainsworth asserts that, because Clark claimed a privileged fee-agreement contract with CACH, Clark should not have been permitted to testify. Ainsworth further contends that CACH's counsel failed to establish any of the *Arthur Anderson*[4] factors regarding the reasonableness and necessity of attorney's fees. Finally, Ainsworth asserts that CACH failed to segregate its attorney's fees between recoverable and non-recoverable claims.

Texas law prohibits recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). "Reasonable" attorney's fees are available to a prevailing party on a breach of contract claim. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008). We review an award of attorney's fees on the basis of breach of contract for an abuse of discretion. *E.g.*, *Llanes v. Davila*, 133 S.W.3d 635, 640 (Tex. App.—Corpus Christi 2003, pet. denied) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam)). The test for an abuse of discretion is whether the trial court's decision is arbitrary or unreasonable. *Id.* (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)). Finally, although the trial court has discretion to fix the amount of

---

[4] *See Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

12

attorney's fees, it does not have discretion to deny attorney's fees entirely if they are proper. *Hassell Constr. Co., Inc. v. Stature Comm. Co., Inc.*, 162 S.W.3d 664, 668 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Regarding Clark's testimony, Ainsworth's attorney lodged the following objection:

> Judge, I have some objections as to his testimony on attorney's fees.
>
> Nowhere at any point have they told us how much. We asked them for time records in our request for production. He said they didn't exist. We asked for a copy of the contract. They claimed privilege. . . .
>
> I would object to him offering any testimony on attorney's fees, whatsoever.

Clark responded that he was statutorily entitled to attorney's fees, that he does not keep time records on debt cases, and that he has a contingency fee of twenty-five percent. He further asserted that the information Ainsworth had requested contained attorney/client information that was privileged. The trial court overruled Ainsworth's objection and permitted Clark to testify. Ainsworth has not established that the contingency-fee agreement was not protected by the attorney/client privilege. Accordingly, we see no abuse of discretion in the trial court's ruling, and overrule this portion of Ainsworth's fourth issue.

Turning to the reasonableness of Clark's fees, he testified as follows:

- He has been a licensed attorney since May of 1993;

- He has prosecuted debt collections for the past eighteen years and knows what other attorneys charge as reasonable fees;

- The twenty-five percent contingency fee on the principle amount owed is reasonable and necessary given the amount of work he put into this case;

- He has "probably put in three times the amount" of time he usually puts into debt collection cases in this case;

- He considered all the work he put into this case to be recoverable, *i.e.*, he did not need to segregate his fees between his work on CACH's breach of contract claim and his work defending against Ainsworth's counterclaims;

- He does not keep hours on debt collection cases; and

13

- He was requesting $1,507.13 in attorney's fees.

Clark's testimony covers some of the *Arthur Anderson* factors. For example, Clark established his experience in working on this type of case and explained that he was aware of the customary fees charged locally for similar services. *See Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (listing eight factors a factfinder should consider when determining the reasonableness of attorney's facts). He further testified that this case required about three times the usual amount of time it takes him to prosecute similar cases. *Id.*

Although not all the *Arthur Anderson* factors are addressed by Clark's testimony, a litigant is not required to present evidence on each of these factors. *Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The trier of fact may also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties in determining the reasonableness of the attorney's fees. *Id.* Here, the trial judge did not award Clark the full amount he requested ($1,507.13), instead awarding him only $1,150.00. We further note that, as discussed above, Ainsworth requested a substantially larger sum for attorney's fees—$5,120.00. Considering the above described testimony, as well as the additional factors set forth in *Academy Corporation* listed above, we conclude that the trial judge was within his discretion to award CACH $1,150.00 in attorney's fees. We overrule this portion of Ainsworth's fourth issue.

Ainsworth next asserts in this issue that CACH was required to segregate its fees between its recoverable breach of contract fees and its unrecoverable fees on his counterclaims. If any attorney's fees relate solely to claims for which fees are not recoverable, a claimant must segregate recoverable from unrecoverable fees. *Tony Gullo Motors I*, 212 S.W.3d at 313. "Intertwined facts do not make all attorney's fees recoverable; it is only when discrete legal services advance both a recoverable and

14

unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14.

Here, all the claims at issue before the trial court involved CACH's successful breach-of-contract claim. CACH's claim and Ainsworth's counterclaims depended upon the same essential facts, using the same documents and witnesses. *See id.* at 314. Hence, the legal work performed by CACH's attorney advanced both the prosecution of its breach-of-contract claim and the defense of Ainsworth's counterclaims. The legal work performed by CACH's attorney advanced both recoverable and nonrecoverable claims. *See id.* at 313–14; *cf. 7979 Airport Garage, L.L.C. v. Dollar Rent a Car Sys., Inc.*, 245 S.W.3d 488, 507–09 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (concluding that fees incurred in defending against counterclaims did not have to be segregated from those incurred in prosecuting breach-of-contract claim because claims and counterclaims depended on same essential facts, relied on same documents and witnesses, and appellee had to defeat appellant's claims before it could recover). Under these circumstances, we conclude that CACH was not required to segregate its attorney's fees. We overrule Ainsworth's fourth issue in its entirety.

## Ainsworth's Counterclaims

In his sixth and final issue, Ainsworth contends that the trial court erred by denying his counterclaim. The totality of his argument on this issue is as follows:

> As stated above, if the Court had properly excluded CACH's evidence, there would have been no evidence of CACH's claim; therefore, the Counterclaim, of which there was evidence of, would lie.
>
> The Trial Court erred by denying the Counterclaim of Ainsworth.
>
> The Court of Appeals, in reversing and rendering that CACH should take nothing should therefore also render this issue of Ainsworth's Counterclaim.

No legal authority or record references are provided for this issue. Accordingly, it has not been properly briefed, and it is waived. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate

citations to authorities and to the record."); *Priddy v. Rawson*, 282 S.W.3d 588, 596, 601 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Accordingly, this issue presents nothing for our review and is overruled.

## CONCLUSION

Having overruled each of Ainsworth's issues, we affirm the trial court's judgment.


/s/    Adele Hedges
       Chief Justice


Panel consists of Chief Justice Hedges and Justices Jamison and McCally.